Michael SCOTT, Appellant,

v.

Janice B. KING, Respondent.

No. ED 104001

Missouri Court of Appeals,
Eastern District,
**DIVISION FOUR.**

FILED: February 14, 2017

Jonathan P. Beck, St. Louis, MO, for appellant.

Theodore D. Dearing, St. Louis, MO, for respondent.

KURT S. ODENWALD, Judge

Introduction

Michael Scott ("Scott") appeals from the trial court's judgment entered after a bench trial. Scott sued his landlord, Janice King ("King"), for specific performance to enforce a sale agreement for the leased property. King counterclaimed for unjust enrichment and ejectment, arguing that Scott occupied her property without paying rent. The trial court found in King's favor on both Scott's petition and King's counterclaims. On appeal, all five of Scott's points on appeal fail to comply with Rule 84.04(d)(1),[1] but we exercise our discretion to review Scott's first two points ex gratia. In Point One, Scott argues that the trial court erred in awarding King unpaid rent for the past nine years because the relevant statute of limitations was only five years. In Point Two, Scott claims that the trial court's award of prejudgment interest under Section 408.020[2] was improper because King's unjust-enrichment claim was unliquidated.

Because Scott failed to specifically assert the relevant statute of limitations in

---

1. All rule references are to Mo. R. Civ. P. (2016).

2. All statutory references are to RSMo (2000).

his motion to dismiss King's counterclaim, he waived that defense. Further, because King's unjust-enrichment claim for unpaid rent was liquidated, the trial court's award of prejudgment interest was proper under Section 408.020. Points Three, Four, and Five are dismissed for failing to comply with Rule 84.04(d)(1). Accordingly, the trial court's judgment is affirmed.

## Factual and Procedural History

In June 2006, King agreed to rent a property in the City of St. Louis to Scott. The parties' written agreement required Scott to "pay $250.00 per month for the renting of the property[.]" Further, the agreement required Scott to bring the property up to code by spending an additional $250 per month on improvements. Once the property was up to code, the agreement provided that King would sell it to Scott for $15,000, minus the amount of rent already paid—in other words, the $250 monthly rental payments was to be applied towards the purchase price of the property. The agreement also specified how Scott would make payments. Scott was required to send the monthly rent by a postal money order, and King would send back a receipt for that payment.

In December 2013, Scott sued King. Scott's petition outlined the 2006 written agreement and alleged that he had spent six years bringing the property up to code, using considerable time, money, and "sweat equity." The petition further alleged that Scott notified King that the property was up to code and that he was prepared to purchase the property by paying the outstanding balance. In July 2013, King notified Scott that he still owed $8000 to purchase the property, and Scott agreed to that price, according to the petition. In August 2013, King allegedly presented Scott with a written purchase agreement reflecting the $8000 purchase price, but then King refused to go through with the sale. Thus, Scott's petition sought specific performance to force the sale.

In January 2015, Scott amended his petition by consent. The amended petition reasserted the original count for breach of contract and added additional counts for quantum meruit and unjust enrichment. After the denial of King's motion to dismiss the amended petition, King filed an answer and counterclaims for breach of contract, unjust enrichment, and ejectment. The unjust-enrichment count alleged that Scott had occupied the property from June 2006 through the present, a period of over nine years, without paying rent. The ejectment count sought return of the property, alleging that Scott's occupation was unlawful.

Scott subsequently moved to dismiss King's counterclaim. As grounds for the motion, Scott asserted: "e. the rent allegedly owed by Scott arose from a contract entered into between the parties in June 2006. King failed to bring this action in a timely manner. As such, she is permanently barred by the statute of limitation[s] from bringing it in 2015[.]" The trial court took Scott's motion to dismiss with the case.[3]

The case proceeded to a bench trial. At trial, the parties disputed whether Scott had made the rental payments and had improved the property. Scott maintained that he had paid King $250 in rent monthly, and had paid a total of $15,000. King and her daughter[4] testified that Scott made very few payments. Regarding his

3. The trial court denied the motion in its judgment.

4. King's daughter testified that she had lived with King since 2006, had helped her with the collection of the rent, and had helped her mother account for Scott's payments.

duty to bring the property up to code, Scott testified that he made many improvements, but he admitted that he had never obtained permits or inspections from the city to confirm that the property was up to code. Scott provided the trial court with almost no receipts evidencing his rental payments or the improvements he claimed to have made to the property.

Subsequently, the trial court issued its findings of fact, conclusions of law, and judgment, ruling against Scott on all counts of his petition and for King on her counterclaims for unjust enrichment and ejectment.

Regarding the rental payments, the trial court found Scott's testimony to be "inconsistent, contradictory, and not credible." The trial court found that Scott had been unjustly enriched by occupying the property without paying rent. The trial court determined that the rent due from June 2006 through the date of the order (November 2015) was $28,500. The trial court further found that only three of Scott's payment receipts, totaling $ 1,000 worth of rental payments, were credible. Subtracting the $1,000 in payments made by Scott, the trial court concluded that Scott owed $27,500 in back rent.

Regarding the improvements to the property, the trial court found that Scott had "presented no credible evidence that he brought the Property up to code." Scott, according to the trial court, failed to produce any documents evidencing money spent on the property. The trial court dismissed Scott's evidence supporting his improvements to the property as "inconsistent, unsupported, and/or contradicted by his own 'receipts' and not credible." This appeal follows.

## Points on Appeal

Scott raises five points on appeal. First, Scott argues that the trial court erred in awarding nine years of unpaid rent to King on her counterclaim for unjust enrichment. Scott posits that this award exceeds the five-year statute of limitations. Second, Scott asserts trial-court error in awarding King prejudgment interest because her counterclaim for unjust enrichment was not liquidated. Scott also alleges trial-court error in Points Three, Four, and Five. However, we dismiss those points for the reasons stated below.

## Discussion

### I. Compliance with Rule 84.04

Before we address the merits of Scott's claims, King argues that each of Scott's five points on appeal fails to comply with Rule 84.04. Rule 84.04(d)(1) requires each point relied on to: "(A) Identify the trial court ruling or action that the appellant challenges; (B) State concisely the legal reasons for the appellant's claim of reversible error; and (C) Explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." Rule 84.04(d)(1) provides a template for appellants to follow:

> The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]." (Emphasis in original.)

 We recognize that the Supreme Court's policy is to decide a case on its merits, rather than on technical deficiencies in an appellant's brief. Missouri Bankers Ass'n, Inc. v. St. Louis County, 448 S.W.3d 267, 271 n.5 (Mo. banc 2014). But Rule 84.04 is *mandatory*, and compliance is necessary to ensure that appellate courts do not become advocates by infer-

ring facts and arguments that the appellants failed to assert. Rockwell v. Wong, 415 S.W.3d 805, 805–06 (Mo. App. E.D. 2013).

■■■ Specifically, Rule 84.04(d)(1)'s requirement that each point relied on include specific information is important. The points relied on provide the opposing party with notice as to the precise matters at issue and inform the appellate court of the legal issues presented for review. Osthus v. Countrylane Woods II Homeowners Ass'n, 389 S.W.3d 712, 715 (Mo. App. E.D. 2012). This rule is not a judicial word game or a matter of hypertechnicality; it serves to put opposing litigants and the court on notice of the specific matters at issue. Kieffer v. Gianino, 301 S.W.3d 119, 120–21 (Mo. App. E.D. 2010). Further, an appellant's argument section must "substantially follow" the order of the point relied on. Rule 84.04(e). Deficient points relied on force respondents and appellate courts to search the briefs and the record to determine appellant's assertions, which wastes judicial resources and creates the danger that appellate courts interpret the appellant's arguments differently than the appellant intended or the opponent understood. In re Marriage of House, 292 S.W.3d 478, 482 (Mo. App. S.D. 2009). Given that a template is specifically provided for in Rule 84.04(d)(1), appellants simply have no excuse for failing to submit adequate points relied on.

Keeping in mind the requirements in Rule 84.04(d)(1), Scott's points on appeal state:

I. THE TRIAL COURT ERRED IN AWARDING APPELLEE DAMAGES ON ITS COUNTERCLAIM IN EXCESS OF THE APPLICABLE STATUTE OF LIMITATIONS.

II. THE TRIAL COURT ERRED IN AWARDING APPELLEE PREJUDGMENT INTEREST BECAUSE HER CLAIM WAS NOT LIQUIDATED OR FOR A DEFINITE AMOUNT.

III. THE TRIAL COURT'S FINDINGS WITH RESPECT TO THE CREDIBILITY OF WITNESSES AND EVIDENCE WERE AGAINST THE WEIGHT OF THE EVIDENCE.

IV. THE TRIAL COURT ERRED IN IGNORING THE SIGNIFICANCE OF EXHIBIT 6 AND/OR THE COURT'S CONCLUSIONS REGARDING EXHIBIT 6 ERRONEOUSLY DECLARE AND/OR APPLY THE LAW.

V. THE TRIAL COURT ERRED IN GRANTING RELIEF TO APPELLEE WHEN THE COURT EXPLICITLY FOUND A LACK OF EVIDENCE SHOWING SHE IS THE OWNER OF THE SUBJECT PROPERTY.

■■■ It is evident that none of these points follow the template provided in Rule 84.04(d)(1). More importantly, the points do not "[e]xplain in summary fashion **WHY**, in the context of the case, those legal reasons support the claim of reversible error " Rule 84.04(d)(1)(C) (emphasis added). Scott's points fail to comply with Rule 84.04(d)(1).

■■■ We have the discretion to review non-compliant briefs ex gratia where the argument is readily understandable. Null v. New Haven Care Ctr., Inc., 425 S.W.3d 172, 177–78 (Mo. App. E.D. 2014). But we cautiously exercise this discretion because each time we review a noncompliant brief ex gratia, we send an implicit message that substandard briefing is acceptable. It is not.

■■■ With regard to Points One and Two, we see relatively narrow legal issues: whether the statute-of-limitations defense applies, and whether awarding prejudg-

ment interest was proper under Section 408.020. As narrow legal issues,[5] we find that Scott's points provide this Court and King adequate notice of the issues raised in the argument section. Thus, we will review Points One and Two ex gratia.

Points Three, Four, and Five are different because these three points rely largely on factual issues, making it critical for Scott to explain, in the context of this case, how the legal reasons and facts support his claim of reversible error. See Rule 84.04(d)(1)(C). These three points fail to explain in the context of this case, even in a summary fashion, **WHY** the trial court's ruling was against the weight of the evidence (Point Three), **WHY** the trial court misapplied the law (Point Four), or **WHY** it was legally important whether King owned the property (Point Five). The points as drafted require this Court to scour the record and analyze for appellant what law and facts might apply to each argument. Scott's points do not provide adequate notice to this Court or to King of the bases for reversible error. We will not act as Scott's advocate. Points Three, Four, and Five are dismissed for failure to comply with Rule 84.04(d)(1).

## II. Standards of Review

We will affirm the trial court's judgment in a civil bench trial unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976). Specifically, each of Scott's first two points raises an issue of law. Regarding Point One, whether a statute of limitations applies is a question of law, which we review de novo. Harms v. Harms, 496 S.W.3d 534, 537 (Mo. App. W.D. 2016). Further, regarding Point Two "Determination of the right to prejudgment interest is reviewed

de novo because it is primarily a question of statutory interpretation and its application to undisputed facts." Children Int'l v. Ammon Painting Co., 215 S.W.3d 194, 202 (Mo. App. W.D. 2006).

## III. Point One—Statute of Limitations

The trial court found in favor of King on her counterclaim for unjust enrichment. In calculating damages, the trial court awarded King $27,500 in unpaid rent—the rent that Scott owed for living at King's property for 9.5 years ($28,500), minus the rent payments Scott made during that time ($1,000). On appeal, Scott argues that because actions for unjust enrichment are subject to a five-year statute of limitations, King is limited to recovering five years of back rent.

■ Section 516.120(1) provides a five-year statute of limitations for all actions "upon contracts, obligations or liabilities, express or implied ...." The parties agree that an action for unjust enrichment is based on an implied or quasi-contractual obligation. Royal Forest Condo. Owners's Ass'n v. Kilgore, 416 S.W.3d 370, 373 (Mo. App. E.D. 2013). As such, unjust-enrichment actions are subject to the five-year statute of limitations in Section 516.120(1). Id.

■ Notably, Rule 55.08, however, requires a party to plead all affirmative defenses, including a statute-of-limitations defense. Bateman v. Platte Cnty., 363 S.W.3d 39, 42 (Mo. banc 2012). More specifically, the defending party "must plead the very provision on which he depends" in order to take advantage of a statute of limitations. Id. (quoting Modine Mfg. Co. v. Carlock, 510 S.W.2d 462, 467 (Mo. 1974)).

**5.** As noted *infra,* we review Points One and Two de novo.

Here, Scott filed a motion to dismiss King's counterclaim for unjust enrichment. In the motion to dismiss, Scott pleaded: "e. the rent allegedly owed by Scott arose from a contract entered into between the parties in June 2006. King failed to bring this action in a timely manner. As such, she is permanently barred by the statute of limitation[s] from bringing it in 2015[.]"[6] "A general reference to 'the statute of limitations' does not satisfy the necessity of pleading the particular provision relied upon." Bateman, 363 S.W.3d at 42.

Because Scott failed to specifically assert the relevant statute of limitations upon which he was relying, he waived the defense. Point One is denied.

## IV. Point Two—Prejudgment Interest

Scott argues in Point Two that the trial court erred in awarding King prejudgment interest under Section 408.020 because King's counterclaim for unjust enrichment was "patently not liquidated."[7] We disagree.

"Section 408.020 permits a plaintiff to receive prejudgment interest at a rate of nine percent per annum, when no other rate is agreed upon, for liquidated claims after demand of payment is made." Hawk Isolutions Grp., Inc. v. Morris, 288 S.W.3d 758, 762 (Mo. App. E.D. 2009). Here, Scott does not dispute that a demand was made. While King did not make a demand before filing suit, King's filing of the counterclaim fulfilled the demand requirement. Watters v. Travel Guard Int'l, 136 S.W.3d 100, 111 (Mo. App. E.D. 2004). The remaining issue is whether King's unjust-enrichment counterclaim, asserting that Scott unjustly received the benefit of living at King's property without paying monthly rent, was liquidated.

To be liquidated, a claim must be fixed and determined, or it must be readily ascertainable by computation or a recognized standard. Jablonski v. Barton Mut. Ins. Co., 291 S.W.3d 345, 350 (Mo. App. W.D. 2009). The rationale for the requirement that a claim be liquidated is founded on the notion that "where the person liable does not know the amount he owes, he should not be considered in default because of failure to pay." Watters, 136 S.W.3d at 111. The purpose of statutory prejudgment interest is also to promote settlement of lawsuits and to compensate plaintiffs fully by accounting for the time-value of money. Doe Run Res. Corp. v. Certain Underwriters at Lloyd's London, 400 S.W.3d 463, 477 (Mo. App. E.D. 2013).

A defending party's denial of liability does not render a claim unliquidated. Rois v. H.C. Sharp Co., 203 S.W.3d 761, 766 (Mo. App. E.D. 2006). The mere fact that a party denies liability or defends a claim against him, or even the existence of a bona fide dispute as to the amount of the indebtedness, does not preclude recovery of interest. Twin River Constr. Co. v. Pub. Water Dist. No. 6, 653 S.W.2d 682, 695 (Mo. App. E.D. 1983). Damages may be ascertainable even if there is a dispute over the actual monetary value of the award. Jablonski, 291 S.W.3d at 350.

Here, the trial court awarded King damages under an unjust-enrichment theory for the rental value of the property for the time in which Scott lived there without paying rent. The parties' written agreement specified that monthly rent was

---

6. Further, while Scott would have been able to plead Section 516.120(1) in his answer, it appears from our record that Scott never answered King's counterclaims.

7. Scott, however, presents no case law to support this assertion.

$250 per month. Scott knew that he owed $250 per month in rent and, in fact, he asserted at trial that he made those payments. However, the trial court found that Scott lived at the property from June 2006 to the time of the judgment (November 2015) and that he had paid only $1000 in rent during that time. In awarding damages, the trial court made a simple calculation using the parties' monthly agreed-upon rental value—an objective standard recognized by both parties—multiplied by the number of months that Scott occupied the property without paying rent. Thus, the damages awarded by the trial court were readily ascertainable by computation, and the claim was liquidated. Jablonski, 291 S.W.3d at 350.

Scott asserts that the damages were not liquidated for two reasons: (1) King sought $54,000 in her prayer for relief, a figure significantly higher than the trial court ultimately awarded; and (2) Scott asserted at trial that he was entitled to ownership of the subject property and thus did not owe anything. Neither argument is persuasive.

Regarding the first argument, King's petition sought $54,000 in damages. However, "[a]n award of less damages than requested does not preclude an award of prejudgment interest on the ascertained damages." Catron v. Columbia Mut. Ins. Co., 723 S.W.2d 5, 7 (Mo. banc 1987). The agreement provided that Scott would pay $250 per month to King in "rent" and an additional $250 per month toward bringing the property up to code. King's counterclaim originally sought both sums ($500 per month) as damages. In calculating damages, the trial court found that Scott was only enriched to the extent that occupied the property without paying $250 per month in rent. The trial court's award of less damages than requested does not preclude an award of prejudgment interest, as the damages were still readily ascertainable by computation using the parties' agreed-upon monthly rental value of the property.

Regarding the second argument, Scott asserts that the damages could not be liquidated because he disputed liability. However, the mere fact that a party disputes liability or defends against a claim does not preclude recovery of prejudgment interest. Columbia Mut. Ins. Co. v. Long, 258 S.W.3d 469, 480 (Mo. App. W.D. 2008); Jablonski, 291 S.W.3d at 350. Holding otherwise would allow a defending party to avoid prejudgment interest simply by disputing liability, and liability is disputed in almost every case.

Because King's unjust-enrichment claim for unpaid rent was liquidated, the trial court's award of prejudgment interest was compulsory under Section 408.020. Point Two is denied.

### Conclusion

As noted above, each of Scott's five points fail to comply with Rule 84.04(d)(1). After exercising our discretion to review Points One and Two ex gratia, we conclude that no error occurred. We decline to review Points Three, Four, and Five, and they are dismissed. Accordingly, the judgment of the trial court is affirmed.

James M. Dowd, P.J., concurs.

Gary M. Gaertner, Jr., J., concurs.