Lois HERD, Plaintiff-Respondent,

v.

Danny HERD, Brady Herd, and Paig Herd, Defendants-Appellants.

No. SD 34833

Missouri Court of Appeals, Southern District, Division One.

Filed January 24, 2018

Attorney for Defendants-Appellants: Grant D. Johnson, Law Office of Grant D. Johnson, LLC, Springfield, Missouri.

Attorney for Plaintiff-Respondent: Jacqueline Bryant, Schenewerk & Finkenbinder, Attorneys at Law, LLC, Branson, Missouri.

GARY W. LYNCH, J.

Plaintiff Lois Herd filed suit against her son Danny Herd, her grandson Brady Herd, and Brady's wife Paig (referred to individually by first names and collectively as "Defendants"),[1] seeking rescission of a

---

1. We use individual first names for clarity because all parties share the same last name.

real estate contract and deed by which she conveyed her interest in 87.95 acres to Brady and Paig, and alleging fraud in Defendants' failure to disclose that the real property conveyed included some acreage and structures that Lois did not intend to convey. The trial court granted rescission upon finding that Danny knew Lois was not aware of the full extent of the conveyance and in doing so, committed actual fraud. Defendants appeal, claiming that the trial court erred in that its findings were unsupported by substantial evidence and against the weight of the evidence. Finding that Defendants' points relied on fail to preserve any issue for appellate review, we affirm.

## Factual and Procedural Background

"We view the evidence and permissible inferences drawn therefrom in the light most favorable to the judgment." *In re Marriage of Scrivens*, 489 S.W.3d 361, 363 (Mo.App. 2016). So viewed, the following evidence relevant to this appeal was adduced at trial.

In 1949, Lois and Joe Herd, Sr., acquired title to approximately 160 acres in Christian County. They later purchased two additional parcels, a 91-acre tract and a 40-acre tract, built a home and two barns, and raised a family.

When Joe became ill and could no longer work, they decided to sell the 91-acre parcel, and in 2010, their son Danny purchased it for $1,000 per acre. The parcel adjoins land Danny already possessed.

In early spring 2013, Lois told Danny she was considering selling more land, and Danny expressed an interest in purchasing more. Later it was decided that Danny's son Brady and his wife Paig would buy approximately 87.95 acres, but Danny ne-

No familiarity or disrespect is intended.

gotiated the transaction on their behalf. Lois never talked to Brady about the sale.

When Lois and Danny discussed where the boundary line would be located, Lois told Danny she wanted an existing fence to serve as the boundary. There were two barns that Lois wanted to keep within the boundaries of the property she retained, and keeping the fence as the boundary would, in part, allow access to a road that ran across the southeastern corner and allow her cattle to access water from a pond. Lois never intended that the two barns be included in the property sold, and Danny admitted that Lois told him she wanted the fence to serve as the boundary.

Danny arranged for a survey and met with the surveyor, directing him to locate the boundary line to the north of the two barns instead of to the south of the barns, as Lois had instructed. When the survey was completed in September 2013, Danny brought Lois the survey and the billing, which she paid. Lois did not look at the survey before she gave it to her attorney so he could use it to prepare the contract and deed for the sale of the property, nor did she examine the survey before the transaction closed. Lois stated that she did not know how to read a survey and would not have understood it. Danny never told Lois that the new property line would be north of the barns.

Lois was around 86 years old when the transaction was negotiated. Lois believed that Danny was acting on her behalf and trusted that he was. Joe had been very ill and had been hospitalized at different times and then confined to the home, with Lois caring for him full time. She and Joe decided to sell the property because they needed the money. But Danny, negotiating on behalf of his son, told Lois, "Don't make it hard on Brady[,]" which she understood

to mean "not to price the land too high." Lois opined that the property should have been worth at least $1,700 to $1,800 per acre, however she and Joe financed the sale to Brady and Paig for what turned out to be $850 per acre rather than the $875 per acre that Lois believed they would receive. Brady and Paig paid $10,000 down and agreed to pay $5,000 every six months until November 1, 2021. The transaction closed on November 1, 2013.

Joe died April 22, 2014. In September 2014, Brady began work on building a fence situated such that it would prevent Lois from accessing the barns she had intended to retain as part of her property and the road across the southeast portion of her property. When Lois confronted Brady about the location of the fence on her property, Brady told Lois that the property was his, as well as the barns, and he continued to build the fence and refused to remove it.

Lois never removed any of the equipment and materials she had stored in the barns after the sale closed because she did not believe the conveyance to Brady and Paig included the two barns. When the dispute arose over the location of the new fence, Brady erected a no trespassing sign warning that violators would be prosecuted.

Lois contacted her attorney, who wrote a letter to Brady and Paig explaining that there was an error that needed to be corrected in the real estate contract and deed. However, neither responded to the letter, and the fence was not removed. Lois also commissioned another survey that designated the former fence line running south of the two barns in addition to the new fence line to the north of the barns. The area of the property in dispute was approximately 0.64 acre.

On October 16, 2014, Lois brought the underlying suit against Danny, Brady, and Paig, seeking rescission of the contract based on fraud. A bench trial was held September 6, 2016.

The trial court issued its findings and conclusions in a judgment dated October 24, 2016, finding that Danny committed actual fraud in that he had a duty to disclose to Lois that the survey he commissioned included the two barns she did not wish to convey in the transaction and that this failure to disclose "fraudulently induced Lois Herd into entering into the real estate transaction." The trial court further found that there was insufficient evidence that Brady or Paig committed actual or constructive fraud and neither could be held liable for the acts of Danny because an agency relationship was not adequately pleaded nor tried by implied consent. However, the trial court found they were not entitled to keep the property wrongfully procured for them by Danny. A constructive trust that included the entire conveyance was established in favor of Lois, and the contract and quit claim deed were rescinded. Defendants timely appeal.

## Applicable Principles of Review

Upon review of a court-tried case, this court will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court's judgment is presumed correct, and the appellant has the burden of proving it erroneous. *Surrey Condo. Ass'n, Inc. v. Webb*, 163 S.W.3d 531, 535 (Mo.App. 2005). The trial court can believe all, part, or none of the evidence presented. *In re Interest of J.A.R.*, 426 S.W.3d 624, 627 (Mo. banc 2014).

### Discussion

Defendants assert three points relied on,[2] and Lois contends that because all three points fail to comply with Rule 84.04, they preserve nothing for our review. We agree.

"Compliance with Rule 84.04 briefing requirements is mandatory in order to ensure that the appellate court does not become an advocate for the appellant by speculating on facts and on arguments that have not been made." *BBCB, LLC v. City of Indep.*, 201 S.W.3d 520, 530 (Mo.App. 2006).

■ A substantial-evidence challenge and an against-the-weight-of-the-evidence challenge are distinct legal claims that must be asserted in separate points relied on under Rule 84.04 to be preserved for appellate review. *Ivie v. Smith*, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014); *In re J.A.R.*, 426 S.W.3d at 630 n.10. Each requires different legal analyses. *Id.*; *Houston v. Crider*, 317 S.W.3d 178, 186–87 (Mo.App. 2010). Moreover, those analyses are incompatible in that " '[a] claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment[,]' " *Ivie*, 439 S.W.3d at 205–06 (quoting *In re J.A.R.*, 426 S.W.3d at 630), and because each challenge requires differing views of the evidence and how that evidence relates to the evidentiary support for the challenged proposition necessary to support the judgment, *Houston*, 317 S.W.3d at 188 n.9.

■ In addition, Rule 84.04 requires that a point relied on "identify the trial court ruling or action that the appellant challenges [,]" "state concisely the legal reasons for the appellant's claim of reversible error[,] and" "explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." Rule 84.04(d)(1)(A)-(C). A point relied on must "set out specific allegations of trial court error[,]" "support the claim of error with legal reasons" and "explain how the case specific details support the legal reasons." *Falls Condo. Owners' Ass'n, Inc. v. Sandfort*, 263 S.W.3d 675, 679 (Mo.App. 2008). A point relied on that does not do so does not satisfy Rule 84.04(d). *Id.* " 'Points on appeal that fail to comply with Rule 84.04(d) present nothing for review.' " *In re Marriage of Gerhard*, 34 S.W.3d 305, 307 (Mo. App. 2001) (quoting *Murphy v. Shur*, 6 S.W.3d 207, 209 (Mo.App. 1999)).

All three of Defendants' points are similarly deficient in at least two respects: first, each explicitly asserts both a substantial-evidence challenge and an against-the-weight-of-the-evidence challenge; and, second, each fails to comply with the Rule 84.04(d)(1)(C) requirement to "explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." The first deficiency, standing alone, preserves nothing for appellate review. *Ivie*, 439 S.W.3d at 199 n.11; *In re J.A.R.*, 426 S.W.3d at 630 n.10.

■ As to the second deficiency, a point that fails to comply with Rule 84.04(d)(1)(C) is nothing more than an abstract statement of law, *Stevens v. Cato*, No. SD34837, —— S.W.3d ——, ——, 2017 WL 4675002, at *2 (Mo.App. S.D. Oct. 18, 2017), and does not provide adequate notice to the respondent or the appellate court of the basis for reversible error, *Scott v. King*, 510 S.W.3d 887, 893 (Mo.App. 2017). While Defendants' points challenge the evidentiary basis of the trial court's judgment, nothing in those

---

2. All three points are set forth per verbatim in the appendix attached to this opinion.

points identifies or gives Lois or this court notice as to the specific trial testimony or exhibits they assert support their claims.[3] In other words, for a substantial-evidence challenge, the Rule 84.04(d)(1)(C) case context is the identification of the trial evidence favorable to the challenged proposition, ascertained in accordance with the standard of review, that an appellant asserts does not comprise substantial evidence of the challenged proposition necessary to support the judgment. *See Houston*, 317 S.W.3d at 187 (appellant must identify the favorable evidence in the record supporting the existence of the challenged proposition). For an against-the-weight-of-the-evidence challenge, the Rule 84.04(d)(1)(C) case context is the identification of not only the trial evidence favorable to the challenged proposition, but also the identification of the trial evidence contrary to the proposition, which also must be ascertained in accordance with the standard of review, *Ivie*, 439 S.W.3d at 205–06. *See Houston*, 317 S.W.3d at 187 (appellant must identify the favorable evidence in the record supporting the existence of the challenged proposition and evidence contrary to the belief of that proposition). Otherwise, the respondent and the appellate court are left to guess and speculate based upon the entire trial record as to the nature of an appellant's point. Here, none of Defendants' points comply with Rule 84.04(d)(1)(C), but merely personalize abstract statements of law with the parties' names. This deficiency, standing alone, preserves nothing for appellate review. *Stevens*, —— S.W.3d at ——, 2017 WL 4675002, at *3; *Scott*, 510 S.W.3d at 893; *Gerhard*, 34 S.W.3d at 307.

Moreover, the two deficiencies combine to free Defendants' points and supporting arguments from the constraints of our standard of review that requires deference to the trial court's credibility determinations, *Ivie*, 439 S.W.3d at 200 (for substantial-evidence challenges) and 206 (for against-the-weight-of-the-evidence challenges), and the trial court's ability and responsibility to weigh the evidence, *see id.* at 206 (against-the-weight-of-the-evidence standard serves only as a check on a circuit court's potential abuse of power in weighing the evidence). While an appellant may bask and take flight in such freedom of his or her own making, it presents a substantial hurdle and impediment for a respondent trying to formulate a logical and coherent response based upon the standard of review and for a reviewing court in resolving the appeal in accordance with that standard. As Lois notes in her brief, she "is left guessing to determine the nature of [Defendants'] argument." So are we.

Failure to properly state the points relied on indicates a lack of understanding of the appellate function and process. Ordinarily, an appellate court sits as a court of review. Its function is not to hear evidence and, based thereon, to make an original determination. Instead, it provides an opportunity to examine asserted error in the trial court which is of such a nature that the complaining party is entitled to a new trial or outright reversal or some modification of the judgment entered. It is not the function of the appellate court to serve as advocate for any party to an appeal. That is the function of counsel. It would be unfair to the parties if it were otherwise. That is the reason for

---

**3.** Trial testimony covers 271 pages of the trial transcript and 38 exhibits were admitted in evidence.

the sometimes expressed unwillingness of an appellate court to assume the role of counsel and advocate for a party on appeal. When counsel fail in their duty by filing briefs which are not in conformity with the applicable rules and do not sufficiently advise the court of the contentions asserted and the merit thereof, the court is left with the dilemma of deciding that case (and possibly establishing precedent for future cases) on the basis of inadequate briefing and advocacy or undertaking additional research and briefing to supply the deficiency. Courts should not be asked or expected to assume such a role. In addition to being inherently unfair to the other party to the appeal, it is unfair to parties in other cases awaiting disposition because it takes from them appellate time and resources which should be devoted to expeditious resolution of their appeals.

*Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978).

■ Of course, our preference is to review even deficient points on whatever merit they might possess if the deficiencies do not impede impartial review. *Stevens*, — S.W.3d at ——, 2017 WL 4675002, at *3. Here, as noted above, the deficiencies in Defendants' points fail to notify Lois of the case-contextual bases for Defendants' claims of trial court error thereby substantially impeding her ability to appropriately respond. Moreover, we would have to become an advocate for Defendants to speculate about, much less actually identify, those bases. These deficiencies impede the impartial review of Defendants' claims. Defendants' three points are denied.

## Decision

Because the trial court's judgment is presumed correct, *Surrey Condo. Ass'n, Inc.*, 163 S.W.3d at 535, and Defendants

have failed to preserve for appellate review any issue as to its correctness, the trial court's judgment is affirmed.

MARY W. SHEFFIELD, P.J.—concurs

DON E. BURRELL, JR., J.—concurs

## APPENDIX

Point One:

The trial court erred in finding that there was clear and convincing evidence that Danny Herd committed actual fraud because there is not sufficient evidence and the weight of the evidence does not support that: 1) Danny Herd had dominon [sic] over Lois Herd in regard to the transaction that would give rise to a fiduciary or confidential relationship between Danny Herd and Lois Herd which imposed a duty on Danny Herd to not only supply Lois Herd with a copy of the [ ] survey, but also to affirmatively instruct Lois Herd that the two barns and approximately 0.64 acres were included in the [ ] survey and therefore was part of the sale of 87.95 acres to Brady and Paige [sic] Herd; 2) Lois Herd under the circumstances exercised ordinary diligence to understand the [ ] survey and despite ordinary diligence the information contained in the [ ] survey was not available to her; and 3) despite employing an attorney who received a copy of the [ ] survey and used it to draft the transaction documents, his knowledge of the [ ] survey did not, or should not, have imputed to Lois Herd and she was still ignorant of the information therein. The courts [sic] findings are unsupported by substantial evidence and is [sic] against the weight of the evidence.

Point Two:

The trial court erred in finding that there was clear, cogent and convincing

evidence that excluded every reasonable doubt in the mind of the trial court to support establishing a constructive trust in the favor of Lois Herd concerning the sale of the 87.95 acres of real property to Brady and Paig Herd due to the actual fraud of Danny Herd. The courts [sic] finding is unsupported by substantial evidence and is against the weight of the evidence.

Point Three:

The trial court erred in finding that there was clear and convincing evidence to support equitable rescission of the contract for sale of real estate and personal property and quit claim deed conveying the 87.95 acres from Lois Herd to Brady and Paig Herd due to the actual fraud of Danny Herd. The court's finding is unsupported by substantial evidence and is against the weight of the evidence.