

# Missouri Court of Appeals

## Southern District

### In Division

| | | |
|---|---|---|
| CLAIRE S. WILKERSON, | ) | |
| | ) | |
| Respondent, | ) | No. SD38454 |
| | ) | |
| v. | ) | **Filed: February 25, 2025** |
| | ) | |
| CLAY M. WILKERSON, | ) | |
| | ) | |
| Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF LAWRENCE COUNTY

Honorable Don Trotter, Judge

## AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS

Appellant Clay M. Wilkerson ("Father") appeals from an amended judgment of dissolution which awarded Respondent Claire S. Wilkerson ("Mother") maintenance, child support, designated Mother's address as the address for the parties' minor children's education, and awarded Mother more parenting time than Father. In five points, Father claims the trial court erred in: finding Mother was not able to support herself through appropriate employment (point 1); calculating the amount of child support using Mother's stale income information (point 2); awarding Father only limited parenting time (points 3 and 4); and designating Mother's address as the address for children's educational

purposes (point 5).  Finding merit in point 2, but none in the other points on appeal, we vacate the judgment as to its calculation of child support.  On remand, the trial court is instructed to:  (1) determine the most accurate figure of Mother's gross monthly income expectation at the time of trial and to calculate Father's child support obligation accordingly; and (2) amend the judgment to state that Mother is awarded sole physical custody of the children.  In all other respects, the judgment is affirmed.

## Standard of Review

Our standard of review in a marriage dissolution case is the same as in any other court-tried case.  *Pickens v. Pickens*, 687 S.W.3d 712, 715 (Mo. App. S.D. 2024).  We will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).  We presume the trial court's judgment is correct, and it is appellant's burden to prove otherwise.  *Herd v. Herd*, 537 S.W.3d 414, 416 (Mo. App. S.D. 2018).  When reviewing evidence, we view it in the light most favorable to the trial court's judgment, deferring to the trial court's resolution of conflicts and credibility assessments.  *In re McIntire*, 33 S.W.3d 565, 568 (Mo. App. W.D. 2000).  "The trial court can believe all, part, or none of the evidence presented." *Herd*, 537 S.W.3d at 416.

## Background and Procedural History

Father and Mother married in September 2011.  At the time of trial, their three minor children were between the ages of 4 and 9.  During the marriage, the family lived in Halltown, Missouri, and the two oldest children attended school in the nearby Miller

School District.  Mother had always served as the primary caretaker of the children and had been responsible for taking them to school.

In December 2021, Mother suspected Father was having an extramarital affair which was later confirmed by Father, who admitted he had cheated on Mother with another man.  In July of 2022, Father moved from their Halltown home to a home in Republic.

After Father moved out, both parties remained involved in the children's lives and implemented a parenting schedule where Father had the children every other Friday through Sunday as well as a few hours one night per week.[1]  Mother had the children during the other times and was responsible for taking the children to school.

*Relocation to Fordland*

Mother remained in the Halltown home while the case was pending but sought to relocate to Fordland, Missouri, explaining she could not afford to remain in the Halltown home.  She believed the move would provide her and the children with more opportunities, a fresh start, and a stronger support system.

Mother's parents lived in Fordland and owned land where Mother could build a home after the divorce.  Until the new home was constructed, Mother and the children could live with Mother's parents.  Mother explained it was only a six-minute drive from her parents' home to the Fordland school whereas it was a 15-minute drive from the Halltown home to the Miller elementary school.  Mother also believed she and the children would have a stronger support network in Fordland by having relatives nearby.

---

[1] At trial, Mother advocated for a continuation of this schedule while Father wanted the time to be split more equally.  Mother wanted the same schedule to continue because "it's best for [her] children" when they have the same routine and structure, at least during the school year.

Finally, Mother worried that if she and the children remained in Halltown, they would be negatively impacted by "talk" or "judgment" in the Miller community surrounding Father's "certain lifestyle choices[.]"

*Mother's Income, Employment History, and Reasonable Needs*

Both Father and Mother were employed by Prime Trucking during the marriage. Mother, who has an associate of arts degree, worked in electronic data interchange while Father worked in sales support. Mother had worked full-time, but reduced her work schedule to part-time, typically working 10 hours per week from home, after the parties' youngest child was born.

Mother struggled financially while the case was pending. To make ends meet, Mother had to borrow money and received financial assistance from her family.[2] Father's parents also assisted Mother by giving her $300 a month.

In January 2023, Mother resumed working full time (50 hours a week) from home and was earning significantly more than she had earned in 2022. Mother worked Monday through Friday 5:00 a.m. to 5:00 p.m. and was currently being paid based on a 40-hour work week plus 10 hours of overtime pay. Mother testified her current pay always included 10 hours of overtime.

Because Mother was working full-time in 2023 but only part-time in 2022, Mother's income in 2023 was substantially higher than her 2022 income. Mother's 2022 W-2, which was admitted into evidence, reflected 2022 gross annual wages of $24,231

---

[2] Mother testified Father had not been paying child support while the case was pending but that he had paid for things like school pictures and her Verizon phone bill, as well as Mother's personal property taxes, clothes, supplies, and glasses for the children.

(or $2,019.25 monthly). Mother testified her Income and Expense Statement listed her monthly net income after deductions, including her 401(k) deduction.[3]

Mother's 2023 paystubs, which were admitted by both Mother and Father, showed Mother's year-to-date pay gross earnings for the pay period ending October 13, 2023, were $40,563.51. While Mother initially testified she "wouldn't assume" she grossed "any more than $30,000" a year, Mother acknowledged, on cross-examination, that her current gross annual salary was between $50,000 and $60,000.[4] Mother's paystubs, which reflect seven weeks of pay in 2023, show a net average of $659.07 per week (or $2,855.97 per month).[5]

*The Amended Judgment of Dissolution*

The trial court awarded the parties "joint legal custody" and "joint physical custody[.]" In making its custody determination, the trial court made findings on each of the best-interest factors, granted Mother permission to move the children to Fordland, and found Mother had rebutted section 452.375.2's presumption of equal parenting time.[6] Specifically, the trial court found:

> The Fordland area provides a supportive and enriching environment for
> the children, conducive to their overall development and well-being. . . .
> While the presumption may advocate for equal custody, the Mother's

---

[3] A spouse's voluntary 401(k) contributions may not be deducted from net income for the purposes of determining maintenance as a matter of law. **McKown v. McKown**, 280 S.W.3d 169, 174 (Mo. App. W.D. 2009).

[4] When asked why her Form 14 and Income and Expense Statement did not reflect her current gross wages, Mother explained she had been looking at net income.

[5] Mother's 2023 paystubs show net weekly payments of $606.41, $627.68, $571.17, $757.73, $706.15, $693.13, and $651.27. To calculate Mother's current net average monthly income, we averaged Mother's weekly net pay from those seven paystubs, then multiplied that number by 52 weeks and then divided that amount by 12 months.

[6] All statutory citations are to RSMo (2016).

evidence compellingly argues why this presumption has been adequately overruled in this case.

Father was awarded visitation rights "every other weekend, starting from Friday at 5:00 pm and ending on Sunday at 5:00 pm." In addition, Father received visitation every Tuesday "from after school until 8:30 pm." The trial court observed this schedule was "designed to foster a continuing and affectionate relationship between Father and the children, while also accommodating the children's daily routines and educational commitments." During the summer, each parent would receive alternating weeks with the children and "one uninterrupted two-week period for vacation every [s]ummer."

Mother was awarded maintenance in the amount of $800 a month. The trial court found Mother was entitled to maintenance because "given [Mother's] current employment situation, [Mother] cannot sustain herself without financial assistance." In making this determination, the trial court cited to Mother's Income and Expense Statement, which listed her gross monthly income as $2,109.25 and net monthly income as $1,554.79.[7] Mother's total expenses, minus the children's expenses, were listed as $4,204. The trial court observed that, while Mother "did have some higher income due to over time," those overtime hours could not be guaranteed and "couldn't be counted on for long term."

Father was ordered to pay Mother monthly child support in the amount of $1,331. The trial court's Form 14 reflected Mother's monthly gross income as $2,600 (or $31,200 annually). The trial court rejected both Mother and Father's reported amount of Mother's income. Mother's maintenance award of $800 was added to her income, resulting in an

---

[7] These figures reflected Mother's 2022 W-2 rather than her 2023 current income.

adjusted monthly gross income of $3,400 for Mother. Father was given a 10% overnight visitation credit.

With regard to the division of marital property, Father received assets with a net value of $826,586 while Mother received a net value of $59,577. The trial court ordered Father to pay Mother an equalization payment in the amount of $258,630. Father appeals from that judgment in five points.

Finally, the trial court found Father engaged in certain misconduct throughout the marriage. Specifically, the trial court found Father "financially abandoned" his family, leaving them "destitute[,]" used family income to finance long weekend trips, attempted to manipulate the children into blaming Mother for the separation, and wanted 50-50 child custody so he would not have to pay child support.

**Discussion**

*Maintenance (Point 1)*

According to Father, the trial court "erred in concluding that [Mother] was unable to support her reasonable needs with her income because such conclusion was against the weight of the evidence" in that the trial court relied on stale employment information to determine Mother's income from employment. "To prevail on an against-the-weight-of-the-evidence challenge, a litigant must show that the trial court could not have reasonably found, from the trial record, the presence of a fact necessary to uphold the judgment."[8]

---

[8] An against-the-weight-of-the-evidence challenge presupposes the existence of substantial evidence supporting the judgment and requires an appellate court to assess the persuasive value of the evidence. ***Holm v. Wells Fargo Home Mortgage, Inc.***, 514 S.W.3d 590, 596 (Mo. banc 2017). Father must show the circuit court "could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment." ***Ivie v. Smith***, 439 S.W.3d 189, 206 (Mo. banc 2014).

*Hurricane Deck Holding Co. v. Spanburg Invs., LLC*, 548 S.W.3d 390, 393 (Mo. App. S.D. 2018). This type of challenge serves only as a check on a circuit court's potential abuse of power in weighing evidence, and an appellate court will reverse only in the rare case where we have a firm belief that the judgment is wrong. *Id.*

Father fails to demonstrate the trial court could not have reasonably found Mother was unable to support her reasonable needs with her income because her testimony and the evidence of her income, which included the 2022 W-2 and the 2023 paystubs, showed her monthly net income was less than her reasonable needs. When a party requests maintenance, the trial court must follow a two-step process to determine if maintenance is warranted. *Bitters v. Olive*, 691 S.W.3d 1, 12 (Mo. App. W.D. 2024). First, it must determine if the spouse seeking maintenance "[l]acks sufficient property, including marital property apportioned to him, to provide for his reasonable needs[.]" § 452.335.1(1). Next, it must determine if the maintenance-seeking spouse "[i]s unable

---

To ensure appellate courts do not intrude on the circuit court's role as the finder of fact, a viable against-the-weight-of-the-evidence claim must follow a specific analytical framework. The appellant must:

(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;

(2) identify all of the favorable evidence in the record supporting the existence of that proposition;

(3) identify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,

(4) demonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*O.H.B. by next friend S.M.B. v. L.Y.S.*, 665 S.W.3d 329, 333 (Mo. App. E.D. 2023).

to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home."  § 452.335.1 (2).

"Thus, to proceed under the statute, the court must first determine the reasonable needs of the spouse seeking maintenance, and then determine whether that spouse is able to provide for those needs through the use of property or appropriate employment."[9] *Buchholz v. Buchholz*, 166 S.W.3d 146, 157 (Mo. App. S.D. 2005).  The party seeking maintenance has the burden to establish these two steps.  *Bitters*, 691 S.W.3d at 12.

---

[9] If this threshold requirement is satisfied, then the trial court must consider the factors enumerated in section 452.335.2 to determine the amount and duration of the award, balancing the reasonable needs of the maintenance-seeking spouse with the other spouse's ability to pay.  These factors are:

> (1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;
>
> (2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;
>
> (3) The comparative earning capacity of each spouse;
>
> (4) The standard of living established during the marriage;
>
> (5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;
>
> (6) The duration of the marriage;
>
> (7) The age, and the physical and emotional condition of the spouse seeking maintenance;
>
> (8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;
>
> (9) The conduct of the parties during the marriage; and
>
> (10) Any other relevant factors.

§ 452.335.

Determining whether Mother was able to support herself through appropriate employment requires the court to weigh Mother's reasonable needs against her potential earnings. *See **Hammer v. Hammer***, 139 S.W.3d 239, 241 (Mo. App. W.D. 2004). "If there is a gap between the 'reasonable needs' of the spouse and the resources and potential earnings of that spouse, and the other spouse has the ability to pay maintenance, maintenance should be awarded." ***Id.***

*Reasonable Needs v. Potential Income*

"A maintenance award is aimed at closing the gap between the income of the spouse seeking maintenance and that spouse's monthly expenses." ***In re Marriage of Neu***, 167 S.W.3d 791, 795 (Mo. App. E.D. 2005). To determine whether the party seeking maintenance has met his or her burden under section 452.335(1), the trial court must determine whether the expenses claimed constitute "reasonable needs" of the requesting party. ***Id.*** "Reasonable needs" are not just the spouse's actual expenses at the time of dissolution; the trial court may take into account the standard of living maintained by the parties during the marriage. ***Angel v. Angel***, 356 S.W.3d 357, 362 (Mo. App. W.D. 2011).

Mother's reasonable needs totaled $4,204 per month. Father does not dispute this finding. Father challenges the finding that Mother was unable to meet her reasonable needs through employment because the trial court based its conclusion on Mother's 2022 W-2 and Income and Expense Statement, which showed a gross monthly income $2,019.24.[10] Father argues the trial court should not have relied on this evidence because

---

[10] The evidence that supports this amount was Mother's 2022 W-2, which showed yearly wages of $24,231.97 from working at Prime.

10

it was based on Mother's 2022 income, which was significantly less than her current income. Father is correct that an award of maintenance must be based on the parties' existing circumstances.[11] ***Orange v. White***, 502 S.W.3d 773, 778 (Mo. App. E.D. 2016). Father is also correct that the evidence showed Mother's current income was significantly higher than her 2022 income. But Father is incorrect that the trial court's finding that Mother was unable to support her reasonable needs through employment was against the weight of the evidence because *all* the evidence, including the 2023 paystubs, showed Mother's current net income was still less than her reasonable needs. Both Mother and Father admitted Mother's 2023 paystubs, which showed Mother's income at the time of trial. This evidence showed Mother's average monthly net income was $2,855.97 and her reasonable needs were $4,204 per month. While Father argues the trial court should use Mother's current gross income for determining if maintenance should be awarded, it is proper for the trial court to consider the spouse's expenses in light of her net income after taxes.[12] ***Ruffino v. Ruffino***, 400 S.W.3d 851, 855 (Mo. App. E.D. 2013). Given that the evidence of Mother's current net income was still less than her reasonable needs, the trial court's determination that Mother was unable to support her reasonable needs through employment was not against the weight of the evidence. Point 1 is denied.

---

[11] A trial court awarding maintenance must consider the current financial resources of the parties. ***Meier v. Meier***, 306 S.W.3d 692, 698 (Mo. App. E.D. 2010).

[12] We also point out that "[t]he trial court need not perform an exact mathematical calculation and may award a reasonable amount above the party's itemized expenses." ***Wilson v. Murawski***, 634 S.W.3d 678, 687 (Mo. App. E.D. 2021) (quoting ***Sulkin v. Sulkin***, 619 S.W.3d 155, 159 (Mo. App. E.D. 2021)).

*Child Support (Point 2)*

In point 2, Father argues the award of child support to Mother in the amount of $1,331 per month was against the weight of the evidence because it relied on Mother's 2022 gross income rather than her current gross income, which was nearly twice as much. The trial court, in calculating child support, listed Mother's gross monthly income on the Form 14 as $2,600. We agree with Father that using $2,600 as Mother's gross monthly income was against the weight of the evidence.

The method and guidelines for calculating child support are found in section 452.340 and Rule 88.01.[13] Form 14 considers the respective parents' incomes. ***Tolu v. Stientjes***, 703 S.W.3d 619, 639 (Mo. App. E.D. 2024). Form 14 requires the court to determine the parents' *gross* monthly income. "It is well settled that courts should consider past, present, and anticipated earning capacity in determining child support amounts." ***Pearcy v. Pearcy***, 193 S.W.3d 844, 847 (Mo. App. S.D. 2006). That said, a court may choose to ignore income history and look at income from only one year if it finds that amount to be the most accurate predictor of a parent's income. ***Id.*** But the trial court should not use that year's earnings as the sole basis when those earnings are an anomaly or do not reflect current earning capacity. *See **id.*** at 847-48 (finding trial court abused its discretion in using evidence of income that did not reflect mother's current or

---

[13] Under Rule 88.01, the circuit court must follow a two-step procedure. "First, a court must calculate the presumed child support amount according to Rule 88.01 using an effective Form 14." ***Girgis v. Girgis***, 676 S.W.3d 510, 513 (Mo. App. E.D. 2023). When Form 14 is used, "[t]here is a rebuttable presumption that the presumed child support amount is the correct amount of child support." ***Id.*** (internal citation omitted). Second, the circuit court must determine if the presumed child support amount is unjust or inappropriate based on the Form 14 directions. ***Id.*** All rule references are to Missouri Court Rules (2023).

future income expectations).  "The point is that, whatever income figure is used, this figure must be the most accurate figure of income expectation." *Id.* at 848.

*Pearcy* is instructive.  In that case, the trial court used the mother's lowest annual income from 2004 for Form 14 purposes even though her income in the previous three years and current year was significantly higher.  *Id.* at 845.  The father, on appeal, argued the trial court's child support amount was not supported by substantial evidence because the lower income amount was an anomaly.  *Id.*  Our Court agreed:

> Here, the evidence is insufficient to support using the aberrational year of 2004 as the figures are much too low.  Wife's 2004 income was $30,000 less per year than the average amounts earned from 2001–03.  Moreover, the income she had earned in the first four months of 2005 showed that 2004 was not an accurate predictor of her present earning capacity.  Finally, we note that Wife essentially admitted that the lower amount income received in 2004 was an anomaly.
>
> … .
>
> [W]e hold it was not proper and was an abuse of discretion for the trial court to use evidence of income that did not reflect Wife's current or future income expectations.  Unlike *Thill,* there is evidence here that Wife's lowered dividend income for 2004—which the trial court used as Wife's Form 14 income estimate—was an anomaly.  Wife's current earnings (albeit for only the first four months of 2005) confirmed that 2004 was simply an anomaly and the most accurate predictor of Wife's income expectations would be what she had historically received.

*Id.* at 847-48.

Like in *Pearcy*, here the trial court relied on a figure that did not reflect Mother's current earning capacity.  It is unclear how the trial court determined Mother's gross monthly income to be $2,600.  There are no paystubs, no testimony, no W-2s or any other evidence that support the finding that $2,600 was the most accurate figure of Mother's gross monthly income expectation.  The evidence showed Mother had worked for the

13

same employer for a number of years.  Before the parties' youngest child was born, Mother worked full-time, but reduced her work schedule to part-time, typically working 10 hours per week from home.  Mother's 2022 W-2 showed her monthly gross income was $2,019.24.  But by 2023, Mother resumed working full-time, was earning much more, and always had 10 hours of overtime pay.  There is no testimony or evidence that Mother would not or could not continue the full-time schedule in the future.  Her 2023 paystubs showed a significant increase, a figure closer to $4,000 for monthly gross income, and Mother admitted her annual current gross income was over $50,000.  "A circuit court's judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment."  *Robinson v. Langenbach*, 599 S.W.3d 167, 180 (Mo. banc 2020) ( quoting *Ivie*, 439 S.W.3d at 206).  Here, the trial court could not reasonably have found, from the record below, that Mother's current or future gross income expectation was $2,600 since there was no evidence showing that amount was Mother's current income expectation.  *See id.*  Point 2 is granted.

### Unequal Parenting Time

Points 3 and 4 challenge the trial court's grant of limited parenting time to Father because it misapplied the law (point 3) and was against the weight of the evidence (point 4).  According to Father, the trial court misapplied the law in granting Father limited parenting time because section 452.375.2 creates a presumption of equal or substantially equal parenting time.  While Father is correct that the time awarded to him does not meet the definition of "joint physical custody," Father does not demonstrate the trial court misapplied section 452.375.2's presumption or that the trial court's determination that the

14

parenting schedule was in the children's best interest was against the weight of the evidence.

*Point 3*

Father's argument demonstrates only that the trial court mischaracterized the custody designation as "joint physical custody"—not that the parenting schedule it awarded misapplied section 452.375.2's presumption of equal parenting time. Section 452.375.1(3), defines "[j]oint physical custody" as "an order awarding each of the parents significant, but not necessarily equal, periods of time during which a child resides with or is under the care and supervision of each of the parents."[14] Whether a parent is awarded *significant* custodial time is the determining factor in classifying physical custody arrangements as either joint or sole, regardless of how the trial court characterizes it. ***Davis***, 582 S.W.3d at 106-07. Deciding whether a dissolution decree awards "sole" or "joint" physical custody is solely a quantitative assessment, based on the parenting time awarded to each parent by the court. ***Id.*** at 107. Custody arrangements consisting of physical custody two or three days every 14 days is not significant custodial time and does not constitute joint physical custody. ***Morgan v. Morgan***, 497 S.W.3d 359, 370 (Mo. App. E.D. 2016). Because Father has physical custody of the children less than three days every 14 days, the custody arrangement does not constitute joint physical custody.

---

[14] "The term 'sole physical custody' is left undefined in the statute. Given the definition of joint physical custody, however, sole physical custody would logically encompass custodial arrangements in which one of the parents is not awarded significant periods of custodial time." ***Davis v. Davis***, 582 S.W.3d 100, 107 (Mo. App. W.D. 2019) (quoting ***Clark ex rel. Clark v. Ingram***, 380 S.W.3d 607, 608 (Mo. App. W.D. 2012)).

But calling the custody designation "joint physical custody" when it is really "sole physical custody" does not mean the trial court wrongly determined that granting Father less parenting time than Mother was in the children's best interest. Section 452.375.2 obligates a court to determine custody in accordance with the best interest of the children and creates "a rebuttable presumption that an award of equal or approximately equal parenting time to each parent is in the best interests of the child." § 452.375. This presumption is rebuttable only by "a preponderance of the evidence in accordance with all relevant factors, including, but not limited to, the factors contained in subdivisions (1) to (8) of this subsection." *Id.* These factors include:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community. The fact that a parent sends his or her child or children to a home school or FPE school shall not be the sole factor that a court considers in determining custody of such child or children;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence as defined in section 455.010 has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and any other child or

16

children for whom the parent has custodial or visitation rights, and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The unobstructed input of a child, free of coercion and manipulation, as to the child's custodial arrangement.

§ 452.375.2.

The trial court expressly applied the presumption, considered the best-interest factors, and found Mother had rebutted the presumption for equal parenting time:

> While the presumption may advocate for equal custody, the Mother's evidence compellingly argues why this presumption has been adequately overruled in this case. The [c]ourt's Parenting Plan, though not a perfect 50-50 split, is constructed in a manner that grants Father significant and meaningful time with the children.

Five of the factors favored Mother while the rest were neutral. Father fails to demonstrate any error in how the trial court applied section 452.375's presumption. Because the trial court applied section 452.375's presumption, made the required findings, and found Mother's evidence rebutted the presumption of equal parenting time, Father does not demonstrate any error in how the trial court applied the law; he only demonstrates that the trial court mislabeled the custody designation. Point 3 is denied. On remand, the trial court is instructed to amend the judgment to state that Mother is awarded sole physical custody of the children.

*Point 4*

In point 4, Father argues the trial court's determination that Mother rebutted the presumption that equal parenting time was in the children's best interest was against the weight of the evidence. "The trial court possesses broad discretion in child custody

17

matters, and its decision will only be reversed if we are firmly convinced the welfare and best interests of the child require otherwise." ***M.M. v. C.S.***, 668 S.W.3d 588, 592 (Mo. App. E.D. 2023) (quoting ***Besancenez v. Rogers***, 100 S.W.3d 118, 122 (Mo. App. E.D. 2003)).

The trial court evaluated each of the best-interest factors and its determination that Mother had rebutted the presumption of equal parenting time was not against the weight of the evidence. Mother testified she had been the primary caregiver for the children and was primarily responsible for the children's daily routines and activities. Mother also testified about the children's need for routine during the school week. Because there is a 38-mile drive between Fordland, where the children would go to school, and Father's home in Republic, it was reasonable for the trial court to infer that awarding Father equal parenting time during the school week would be disruptive to the children's routines and detrimental to their wellbeing. While the evidence also showed Father was involved in the children's lives and desired more time with the children, Father has failed to demonstrate the trial court's best-interest finding was against the weight of the evidence. Point 4 is denied.

*Designating Mother's Address for Educational Purposes (Point 5)*

In point 5, Father argues the trial court's designation of Mother's address as the address for children's education was not supported by substantial evidence because there was no compelling reason for the children to relocate to Fordland. According to Father, the children were well-adjusted to the Miller school system. A not-supported-by-substantial-evidence challenge requires the completion of three sequential steps. The appellant must:

(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;

(2) identify all of the favorable evidence in the record supporting the existence of that proposition; and,

(3) demonstrate why that favorable evidence, when considered along with the reasonable inferences drawn from that evidence, does not have probative force upon the proposition such that the trier of fact could not reasonably decide the existence of the proposition.

*In re Marriage of Chorum*, 469 S.W.3d 484, 489 (Mo. App. S.D. 2015).

A party seeking to relocate with minor children bears the burden of proving that the proposed move is made in good faith and is in the best interest of the children.[15] *Courtney v. Courtney*, 458 S.W.3d 462, 474-75 (Mo. App. E.D. 2015). The trial court determined that the best interest of the children were served by moving to Fordland and attending school there and that Mother's proposed move was made in good faith. Father challenges that determination.

Viewing the evidence in the light most favorable to the judgment, we find the trial court's conclusion that the children's best interest was served by attending school in Fordland is supported by substantial evidence. Mother testified she could not afford to remain in the Halltown home, had an opportunity to build a home on property owned by her parents in Fordland and could live with her parents in the meantime. Mother explained the move would reduce travel time from home to school, that the children would have a stronger support network with their grandparents nearby, and that Fordland had a better school system. Finally, Mother testified that if they did not move, she feared

---

[15] It is the declared public policy of Missouri to promote frequent, continuing, and meaningful contact with both parents after a divorce. *Fohey v. Knickerbocker,* 130 S.W.3d 730, 734 (Mo. App. E.D. 2004). Even so, a trial court may nevertheless properly permit relocation of children even where it will make visitation more difficult for the noncustodial parent. *Id.* at 738.

the children would be negatively impacted by "talk" in the community regarding Father's "certain lifestyle choices." Mother's impetus for moving was not to retaliate against Father for his affair but to improve her financial situation, be closer to family, provide the children with a better education, and limit the children's exposure to gossip or talk in the community about their Father's affair. Based on the evidence presented, we cannot say it was unreasonable for the trial court to determine the children's best interest was served by relocating to Fordland with Mother. Point 5 is denied.

## Conclusion

The trial court's judgment is vacated as to its calculation of child support. On remand, the trial court is instructed to: (1) determine the most accurate figure of Mother's gross monthly income expectation at the time of trial and to calculate Father's child support obligation accordingly; and (2) amend the judgment to state that Mother is awarded sole physical custody of the children. In all other respects, the judgment is affirmed.

MARY W. SHEFFIELD, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

JACK A. L. GOODMAN, J. – CONCURS

20