CONCERNED CITIZENS FOR
CRYSTAL CITY, et al.,
Appellants,

v.

CITY OF CRYSTAL CITY, Missouri,
et al., Respondents,

and

Wings Enterprises, Inc.,
Intervenor/Respondent.

No. ED 94135.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 30, 2010.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 1, 2011.

Application for Transfer Denied
April 26, 2011.

520

Kathleen G. Henry, St. Louis, MO, for appellant.

David P. Senkel, Hillsboro, MO, Jeffrey D. Sigmund, St. Louis, MO, David O. Kreuter, Clayton, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

Concerned Citizens for Crystal City ("CCCC"), William McKenna, Jill Thomas, Sheryl Boss, and William Ginnever (collectively "Plaintiffs") appeal from the judgment of the trial court dismissing their lawsuit and all of their claims against the City of Crystal City, Missouri ("Crystal City") and a number of current and former Crystal City officials (Crystal City and its officials are collectively "Defendants"), as a sanction for discovery violations. We affirm in part and reverse and remand in part.

In 1991, Pittsburgh Plate and Glass Company ("PPG") shut down its factory in Crystal City, which it had operated there for many years. Since that time, Crystal City has sought investors to redevelop the PPG real property. In 2006, Wings Enterprises, Inc. ("Wings") expressed some interest in the PPG property, and began discussions with officials of Crystal City. In 2006 and 2007 officials of Crystal City were involved in a number of meetings and discussions relating to Wings' potential redevelopment of the PPG property as an iron smelter. At some point in time, the public became aware of the proposed redevelopment of the PPG property by Wings. Thomas Kerr, who owned property near the PPG site, proposed his own development plan, and Kerr was involved in the establishment of CCCC, a non-profit organization that opposed the Wings proposal. Ginnever became the president of CCCC and Jill Thomas served as a vice-president thereof.

Ginnever set up a website and electronic forum ("Forum") for CCCC for people to discuss the Wings development, with no restrictions on who could post comments to the Forum. However, posters were required to enter into a registration agreement with CCCC and to provide an email address, apparently to reduce the possibility of spam on the Forum. The authors of posted remarks were anonymous to viewers of the Forum, but Ginnever, as webmaster of the Forum, had the ability to know who posted each comment, apparently due to the source email addresses and IP addresses for each posted remark. There were many postings to the Forum following its establishment. Despite the opposition of CCCC, the City Council of Crystal City approved the necessary transactions for the development of the PPG property by Wings.

In November 2007, the Plaintiffs filed a seven count petition against Defendants. Counts I, II, III, and IV alleged that Crystal City violated the Sunshine Law on multiple different occasions in connection with the redevelopment of the PPG property. Count V alleged that two ordinances connected with the Wings proposal were improperly enacted. Count VI alleged that Crystal City violated the Missouri Industrial Expansion Law. Count VII alleged that Crystal City improperly hired an outside law firm to represent its interests related to the PPG property. Wings

filed a motion to intervene as a party defendant, which the trial court granted.

Discovery proceeded, albeit slowly, with Plaintiffs, Defendants, and Wings all requesting sizable amounts of a variety of information. In early 2009, Plaintiffs' counsel deposed a number of current and former officials of Crystal City. On January 20, 2009, Wings filed a second request for production on Ginnever seeking a number of items, including: a complete copy, in native format, of all information in his possession that had been posted on the domain http://www.clearpillar.com; a complete copy, in native format, of all databases in his possession related to any forum that has appeared on http://www.clearpillar.com, with all copies to include, among other things, the IP addresses related to each post, member names and email addresses, and the text of private messages on the database. Ginnever raised several objections in response. Plaintiffs filed a motion to compel Wings' production of documents pursuant to Plaintiff's first and second requests for production of documents in late January 2009, followed by a motion for leave to file their first amended petition in February 2009. Wings filed its own motion to compel complete answers to deposition questions, interrogatories, and requests for production. In April 2009, Plaintiffs' filed their second motion for sanctions against defendants.

On June 3, 2009, the trial court issued an order addressing several motions that were before it. It denied Plaintiffs' motion for leave to file its first amended petition. It denied Plaintiffs' motion for an *in camera review* of privileged documents, and sustained Wings' motion for a protective order as to certain discovery requests. The trial court ordered Ginnever, and only Ginnever, to produce

a full and complete copy, in native format, of all information in his possession or control, that has been posted on the domain http://www.clearpillar.com. Alternatively, Ginnever may choose to make this information available to Wings' designee, for inspection and copying during normal business hours, for a period sufficient to inspect and copy that material.

The trial court also ordered deponents, including specifically Ginnever and Pamela Portell, one of the defendants, to answer deposition questions regarding the identity of users posting to the Forum. It further ordered all of the Plaintiffs to fully answer several specific interrogatories asked by Wings "without objection or reservation." The trial court also addressed several other discovery matters.

Plaintiffs filed a petition for a writ of prohibition with this Court, which denied it. They then filed a petition for a writ of prohibition with the Missouri Supreme Court, which denied it on August 25, 2009. On September 15, 2009, Ginnever produced electronic copies of purportedly all information that he posted on the Forum, including copies of all of the messages posted on the Forum, but he withheld any information that "could have uniquely identified the users of the forum" and also withheld unposted private messages. The other Plaintiffs also responded to various discovery requests by this time, but were not asked to produce database information from the Forum. On October 8, 2009, Wings, Crystal City, and the other individual defendants filed a motion for sanctions against all of the Plaintiffs for failing to comply with discovery requests and the trial court's June 3, 2009 order, asking the trial court to strike Plaintiffs' petition and dismiss their claims with prejudice, along with awarding defendants their attorneys' fees.

On November 24, 2009, the trial court issued an order and judgment imposing sanctions on all of the Plaintiffs, striking their pleadings and dismissing their claims with prejudice. It denied Plaintiffs' request for sanctions against the defendants, and denied the requests to award attorneys' fees. It found that on June 3, 2009, it had entered an order compelling discovery, and specifically quoted from that order the language set forth above that ordered Ginnever, and only Ginnever, to produce a full and complete copy of all information in his control or possession that had been posted on his website, and ordering deponents, specifically naming Ginnever and Portell, a defendant, to answer deposition questions regarding the identity of users posting to the Forum. The trial court found that the postings "on Ginnever's website" contained comments from people who might be parties to the litigation, or who might be witnesses to relevant events or who might know of statements by parties or other witnesses. The trial court also found that Plaintiffs had no legal right to decide for themselves what the defendants may or may not discover, but rather that "is an issue of law and it has been decided by the highest court in this state." The trial court found that there was only one suitable remedy, namely striking Plaintiffs' pleadings and dismissing their action with prejudice. Accordingly, it ordered the pleadings of all of the Plaintiffs stricken and dismissed the causes of all of the Plaintiffs with prejudice, assessing costs against Plaintiffs.

Plaintiffs now appeal from this judgment.

To facilitate our analysis, we will examine Plaintiffs' points relied on out of sequence, and begin by considering Plaintiffs' second point relied on. In their second point relied on, Plaintiffs argue that the trial court erred in ordering all claims dismissed with prejudice because it abused its discretion in that the Plaintiffs' actions did not show a contumacious and deliberate disregard for the authority of the court that merited this extreme sanction under Missouri law.

██ Discovery has a number of purposes, including the elimination of surprise, assisting in determining the truth, narrowing issues, obtaining relevant information, and aiding trial preparation. *Spacewalker, Inc. v. American Family Mutual Insurance Co.*, 954 S.W.2d 420, 423 (Mo.App.1997). Trial courts have discretion in choosing to impose sanctions, and which sanctions, if any, to impose, for discovery violations. *See Trotter v. Distler*, 260 S.W.3d 913, 915 (Mo.App.2008); *Sher v. Chand*, 889 S.W.2d 79, 82 (Mo.App. 1994). "The trial court's exercise of discretion is subject to review, but it will not be disturbed unless exercised unjustly." *Sher*, 889 S.W.2d at 82; *see also Patton v. May Dept. Stores Co.*, 762 S.W.2d 38, 41 (Mo. banc 1988). This Court has held that any Rule 61.01 sanction that exceeds what is necessary to achieve the purposes of discovery may be an abuse of discretion. *Trotter*, 260 S.W.3d at 915 (quoting *J.B.C. v. S.H.C.*, 719 S.W.2d 866, 872 (Mo.App. 1986)). Dismissal of an action is a severe sanction that ought to be ordered only in extreme situations. *Id.* at 916.

██ Pursuant to Rule 56.01, the trial court may order any party to produce documents that contain evidence relevant to the subject matter in the pending action. However, the provisions for discovery were neither designed nor intended for "untrammeled use of a factual dragnet or fishing expedition." *Misischia v. St. John's Mercy Medical Center*, 30 S.W.3d 848, 864 (Mo.App.2000). Discovery lacking appropriate geographic, temporal, or subject matter limitation is overbroad. *State ex rel. General Motors Acceptance Corp. v.*

*Standridge,* 181 S.W.3d 76, 78 (Mo. banc 2006). It is the affirmative duty and obligation of the trial court to prevent the subversion of pre-trial discovery into a "war of paper" for any reason or purpose. *Misischia,* 30 S.W.3d at 864. Although requested information may be properly discoverable, the trial court ought to consider whether the information may be obtained in a less burdensome manner than that designed by the requesting party. *State ex rel. Coffman Group, L.L.C. v. Sweeney,* 219 S.W.3d 763, 767 (Mo.App. 2005).

We will not discuss the breadth of all of the discovery requests of Wings and Defendants, but rather focus on the requests for database information on postings to the Forum, which the trial court did in dismissing Plaintiffs' case. Wings and Defendants requested information on between 5,000 to 10,000 postings. We note that Ginnever objected at least once to the overbroad nature of the requests for production as follows, in part:

> Objection. This request is overly burdensome and oppressive. Furthermore, the request calls for documents which could not lead to the discovery of admissible evidence. The request is not limited to subject or date and would lead to the production of irrelevant material. The request is intended to harass the plaintiff. . . .

The trial court did not sustain Ginnever's objections and failed to narrow the scope of discovery regarding postings and posters to the Forum. Ginnever produced the content of the public postings, ultimately answering seventy-five interrogatories, and responding to numerous production requests, providing approximately the equivalent of over 6,000 pages of information. Ginnever withheld unposted private

messages and information that could identify the authors of posts. The record before this court does not reflect any attempt on the part of Wings to restrict their broad request for information about people posting comments to the Forum to possibly relevant material. Armed with the public comments or postings, it would be possible to identify those individual postings that indicate possible discoverable witnesses or information relevant to Defendants' defenses, if any, to the claims asserted in Plaintiffs' petition. In order to narrow the scope of discovery concerning private messages, Defendants will need similar access to the text or other information as to the content of those messages, with identifying information removed, as was provided concerning the public postings. This will enable the parties and the court to then determine which private messages and what identifying information about those messages is properly discoverable. It would also be possible to request postings made by any of the parties to the present litigation as possible admissions. The discovery request regarding the Forum was not so restricted. Wings' request for production of all information posted on the domain http://www.clearpillar.com was overbroad. To sanction Ginnever and the other Plaintiffs by dismissing all of their claims for failing to respond to such an overbroad discovery request is unjust and an abuse of the trial court's discretion.[1] It is true that Ginnever and the other Plaintiffs filed petitions for writs of prohibition with this Court and with the Missouri Supreme Court, and both petitions for writs were denied. However, as the Missouri Supreme Court held in *Rodriguez v. Suzuki Motor Corporation,* 996 S.W.2d 47, 61 (Mo. banc 1999), the denial of a petition for

---

1. We also note that the discovery request at issue, the production of information from the Forum database, was not addressed to the Plaintiffs other than Ginnever.

a writ is not a conclusive decision of the merits of the issue presented.

We note that Defendants had previously offered to stipulate to a protective order that would limit the public disclosure of sensitive information, providing in part that certain information could be designated as "confidential" and very sensitive material as "Attorneys' Eyes Only." The trial court on remand may consider any requests for similar protective orders as permitted under Rule 56.01(c). On remand, a refusal to comply with a properly narrowed request for production regarding the Forum database may then provide a basis for sanctions, including dismissal. Given our holding, this Court does not address the merits of Plaintiffs arguments concerning First Amendment protection for the anonymity of those posting comments to a website, as we do not need to reach that issue.[2] Point two is sustained.

■ Having sustained Plaintiffs' second point relied on, we need not address their first and third points, and will proceed with our discussion of their fourth point. Plaintiffs assert in their fourth point relied on that the trial court erred by abusing its discretion in denying their second motion for sanctions against Wings and Defendants because they were prejudiced by the failure of Wings and Defendants to comply with the trial court's order to produce documents, by the substitution of a document into official records, and by misleading statements, which actions removed evidence of an unlawful meeting, prolonged discovery, and increased its cost.

As previously stated, trial courts have discretion in choosing whether or not to impose sanctions for discovery violations. *See Trotter*, 260 S.W.3d at 915; *Sher*, 889 S.W.2d at 82. The trial court's exercise of discretion will not be reversed except for abuse thereof.

Plaintiffs point to three instances of discovery violations that they allege prejudiced them. The first one involves the failure of two Crystal City officials, Thomas Schilly, the mayor, and Debbie Johns, the city clerk, to produce certain email messages that they had received. The limited record before us indicates that the emails at issue were few in number, and apparently were not retained either electronically or in hard copy. According to the counsel for Defendants, they cannot find them, they do not have them, and nothing was done intentionally, or in an effort to hide them. The trial court apparently was persuaded by the testimony of Schilly and Johns, and by the arguments of Defendants' counsel, and did not find the prejudice to Plaintiffs' case to be significant. On this matter, the trial court did not abuse its discretion.

The second instance is the alleged substitution of a billing record from attorneys to Crystal City for legal services in the official records of Crystal City, purportedly replaced by a revised billing record with different information. Both versions of

---

**2.** The appellate courts of Missouri have not yet addressed the issue of requests for discovery of identifying material of "anonymous" posters to an internet site. There are clearly cases where such information is discoverable regarding at least individual postings, as in cases involving alleged criminal activity or the infringement of intellectual property, or an action for defamation. There are, however, legitimate concerns for a "chilling" effect of wholesale discovery of identifying information of anonymous posters, particularly where the internet site at issue deals with critiques of governmental activity and officials. *See Sedersten v. Taylor*, 2009 WL 4802567 (W.D.Mo.2009); Ashley I. Kissinger and Katharine Larsen, *Untangling the Legal Labyrinth: Protections for Anonymous Online Speech*, 13 NO. 9 J. Internet L. 1 (2010). *See also In re Anonymous Online Speakers*, 611 F.3d 653, 657–62 (9th Cir.2010).

the billing record were produced pursuant to two separate Sunshine Law requests by a nonparty to the lawsuit. We note that the record on appeal does not include a copy of a discovery request for such documents, nor does it include a copy of a motion to compel the production of such records. Plaintiffs' second motion for sanctions against Defendants does not allege that Defendants failed to produce such records pursuant to a discovery request, but rather that there was an improper substitution of documents in the official records. Given that there is no allegation that there was a failure to produce documents by Defendants, it is difficult to see how the trial court could sanction Defendants for failing to produce something that was not requested. It is also difficult to see how Plaintiffs could be prejudiced given that both versions were produced pursuant to Sunshine Law requests, and would presumably be available to establish, if it is relevant, that Defendants altered an official record. The trial court did not abuse its discretion in failing to sanction Defendants on this matter.

The third discovery matter raised in the argument relates to "misleading statements" concerning calendars "because the statements caused undue delay and expense to [Plaintiffs] and allowed [Defendants] to destroy relevant evidence." The "misleading statements" were that Plaintiffs and the trial court were told that Defendants did not keep calendars and that certain office wall calendars had been destroyed. Following the depositions of two office clerks, two of the calendars subsequently were discovered by someone in the clerk's office on January 7, 2009, and produced to Plaintiffs thereafter. Nothing in the record indicates that the wall calendars that were destroyed were not simply destroyed in the ordinary course of business by office clerks after the year was over, or that those calendars subsequently discovered in a different room at city hall were being deliberately concealed to hinder discovery. When they were discovered, they were produced. The trial court did not abuse its discretion in failing to sanction Defendants for their misstatements and tardy production of mislaid calendars. Point denied.

In their fifth point relied on, Plaintiffs argue that the trial court erred by abusing its discretion in denying their motion for leave to file their first amended petition, making an arbitrary and unreasonable decision in that it was their first request to amend their original petition, the request was made timely, and the amendments had merit.

Rule 55.33 provides that leave to amend a pleading "shall be freely given when justice so requires." The rules stress liberality on permitting amendments to pleadings, but a party does not have an absolute right to file even a first amended petition. *Lunn v. Anderson*, 302 S.W.3d 180, 193 (Mo.App.2009). The rules on amendment serve to enable a party to present matters that were unknown or overlooked when the party originally filed its pleading, without altering the original cause of action. *Id.* It is within the trial court's sound discretion to deny leave to amend, and absent a showing of abuse, this Court will not disturb the trial court's decision. *Id.* There are a number of factors that should be considered in determining whether an abuse has occurred, including: 1) the hardship to the moving party that a denial would cause; 2) the reasons for the moving party's failure to include the matter in the original pleadings; 3) the timeliness of the application for leave to amend; and 4) the hardship or injustice that granting leave to amend would cause to the non-moving party. *See Lester v. Sayles*, 850 S.W.2d 858, 869 (Mo. banc

1993). The most common reason for denying leave to amend is the resultant prejudice to the non-moving party. *Western Casualty and Surety Co. v. Kansas City Bank and Trust Co.*, 743 S.W.2d 578, 582 (Mo.App.1988).

There is hardship to Plaintiffs in denying leave to amend in that their claims regarding other purportedly illegal or improper actions relating to the development of the PPG property would be precluded. Their stated reason for failing to assert these claims in their original petition is that they lacked sufficient information to raise meritorious claims on the new matters until after they had completed depositions. Defendants and Wings argue that Plaintiffs already possessed this information, and that much of the information was posted on the Forum prior to the filing of the original petition, and the amended petition is an attempt to "sandbag" them. Plaintiffs could have filed some of their additional claims based on these Forum postings, but lacking other evidence beyond hearsay statements, those claims presumably would have failed. It is reasonable to infer that the information obtained during discovery provided plaintiffs with what they believed to be confirmation of the additional claims that rendered those new claims meritorious, or gave rise to new claims. Plaintiffs filed their motion for leave to amend within one week of the completion of the depositions, well before any potential trial date, which appears to be timely given the allegation of the discovery of further claims. This leaves the question of the hardship that permitting Plaintiffs to file an amended petition would cause to Wings and Defendants. Wings and Defendants claim that they faced significant actual and potential prejudice and hardship if the trial court had granted leave to amend. They argue that they had defined their case and trial strategy based on the original petition, and had prepared litigation budgets in anticipation of a trial, and had essentially completed written discovery, with the notable exception of "Forum-related matters." We would note that anytime a party is permitted to amend its pleadings, it is likely to force the other party to make alterations to its trial strategy. The additional allegations relate to the redevelopment of the PPG property, as do the allegations in the original petition, and the purported failures of Defendants to comply with statutes, such as the Missouri Sunshine law, and local ordinances. Knowledge of the matters asserted in the amended petition are within the knowledge of Defendants regarding what they did or did not do regarding compliance with statutes and ordinances. This does not appear to create an undue burden on Defendants, or to require extensive additional discovery. Regarding discovery, which was not complete at the time of the motion to amend, and was not complete when the trial court dismissed the Plaintiffs' case, it would be speculative to say that there is a need for further written discovery. Mindful of the liberal, though not unlimited, policy regarding amendments to pleading, and applying the factors to be considered in evaluating a motion for leave to amend, the trial court abused its discretion in denying Plaintiffs leave to amend their original petition. Point sustained.

The judgment of the trial court is affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion.

SHERRI B. SULLIVAN, P.J., and LAWRENCE E. MOONEY, J., concur.