

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| NEWELL MACHINERY CO., INC., ) | |
| ) | |
| Appellant-Respondent, ) | WD82327 Consolidated with |
| ) | WD82364 |
| v. ) | |
| ) | OPINION FILED: |
| PRO CIRCUIT, INC., ) | February 25, 2020 |
| ) | |
| Respondent-Appellant. ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Sandra C. Midkiff, Judge

Before Division Two:  Cynthia L. Martin, Presiding Judge, Thomas H. Newton, Judge
and Gary D. Witt, Judge

Pro Circuit, Incorporated ("Pro Circuit") appeals from the Circuit Court of Jackson County's judgment awarding $87,424.70 to Newell Machinery Company Incorporated ("Newell") on Newell's unjust enrichment claim.  On cross appeal, Newell appeals from the circuit court's judgment denying their request for prejudgment interest on the judgment and the circuit court's finding in favor of Pro Circuit on Newell's "Delay Claim."[1]  Pro Circuit raises five allegations of error and requests this Court reverse and remand for

---

[1] In Count II of its petition, Newell alleged it incurred damages from Pro Circuit's delay in procuring specific parts.  Newell denominated this claim as "Delay Claim."  We refer to this Count as "Delay Claim" for convenience.

further proceedings.  On cross-appeal, Newell raises two allegations of error and requests that we affirm in part and reverse in part.  We affirm in part and amend the circuit court's judgment in part to include an award of prejudgment interest and correct a statutory citation in the judgment.

## Statement of Facts[2]

Newell is an Iowa corporation, which designs, constructs, and installs manufacturing equipment.  In 2014, Ingredion Incorporated ("Ingredion"), a manufacturer of sweeteners and starches, entered into a contract with Newell to increase its capacity for grain truck unloading at its North Kansas City plant.  Newell was the general contractor and mechanical contractor for the project, but it subcontracted with Pro Circuit to perform the electrical work on the project.

Pro Circuit prepared a written proposal to Newell on June 10, 2014 which provided:

> [Pro Circuit] propose[s] to furnish the manpower, material, tools and equipment necessary to complete the referenced project.  This proposal is based upon our interpretation of the plans and specifications.  Any extra work for items, which are not shown, will be done at an agreed extra price.  Should you award Pro Circuit a contract, understand this proposal shall be a part of the Contract documents.

The proposal consisted of a lump sum of $149,500.00 for all of the electrical work on the project.  Newell accepted Pro Circuit's proposal on September 22, 2014.

On January 31, 2015, Pro Circuit submitted its first application for payment for the amount of $100,000.00.  The first application for payment had a balance of $0.00 for "Net

---

[2] "We view the evidence and all reasonable inferences from the evidence in the light most favorable to the judgment."  *Holt v. Rankin*, 320 S.W.3d 761, 763 n. 3 (Mo. App. W.D. 2010).

2

Change by Change Orders." Newell paid the requested $100,000.00 on March 12, 2015. Pro Circuit submitted its second and final application for payment on March 25, 2015, requesting payment of $140,343.68, which consisted of the remaining lump sum balance of $49,500.00 and an additional $90,843.68 for "Net Change by Change Orders." Pro Circuit alleged Newell had approved ten change orders resulting in the additional amounts owed. Pro Circuit and Newell conducted a meeting regarding the additional amounts claimed. Newell agreed to pay one change order in the amount of $3,418.98. In October 2015, Newell paid the remaining lump sum balance due under the agreement in the amount of $49,500.00 and the approved extra charge of $3,418.98. Newell considered the matter closed.

However, on December 17, 2015, Ingredion received a "Notice of Claim of Mechanics' Lien" from Pro Circuit. Ingredion pressured Newell to "promptly take such actions as are necessary to discharge the lien and/or Notice of Claim in its entirety" to avoid having a lien placed on their real estate. On January 20, 2016, Pro Circuit filed a mechanics' lien for the remaining $87,424.70. Newell disputed the validity of the mechanics' lien on the grounds that Newell did not approve the change orders and that the mechanics' lien was untimely filed. In order to preserve its relationship with Ingredion, Newell paid Pro Circuit $87,424.70 under protest to obtain a release of the lien on January 22, 2016.

On June 29, 2017, Newell filed its petition with the circuit court asserting a claim of unjust enrichment. Newell also brought a second count in its petition (the Delay Claim) alleging Pro Circuit caused delays during the project resulting in damages of $20,800.00. The project required a temporary shutdown of the plant scheduled for the week of

3

January 19, 2015. However, Newell alleged that Pro Circuit did not order the necessary parts to complete the work that had to be performed during the shutdown as scheduled. The shutdown was initially pushed back to January 26, 2015, and ultimately pushed to February 10, 2015. The circuit court found that Newell did not establish by the preponderance of the evidence that Pro Circuit was responsible for the delay in the shutdown.

## Procedural Background

On September 5, 2017, Pro Circuit's trial counsel signed and filed its initial answer. On October 11, 2017, Pro Circuit's trial counsel signed and filed an amended answer raising various affirmative defenses. On October 18, 2017, during a case management conference the circuit court set the matter for trial on July 19 and 20, 2018 with the agreement of the parties. On July 12, 2018, one week before trial, Pro Circuit filed two motions: a Motion to Continue Trial Date ("Continuance") and a Motion for Leave to Amend its answer ("Motion to Amend") to bring counterclaims for defamation and commercial disparagement arising out of the transaction that is the subject of this action. Newell opposed both motions. The circuit court overruled the Continuance on July 17, 2018. Pro Circuit Filed a Motion for Reconsideration of [Pro Circuit's] Motion to Continue Trial Date ("Continuance Reconsideration"), which the circuit court overruled on July 19, 2018. The circuit court also overruled the Motion to Amend on July 19, 2018. The trial was held on July 19 and 20, 2018, as scheduled. The circuit court entered its judgment on October 1, 2018, against Pro Circuit on the unjust enrichment claim, awarding $87,424.70 in damages

without prejudgment interest, and finding in favor of Pro Circuit on the Delay Claim. This appeal followed.

## Discussion

Pro Circuit raises five points on appeal. In its first three points, Pro Circuit alleges the circuit court abused its discretion in overruling: (Point One) its Continuance, (Point Two) its Continuance Reconsideration, and (Point Three) its Motion to Amend. In its fourth point, Pro Circuit alleges the circuit court erred in entering judgment on the unjust enrichment claim, and in its fifth point, Pro Circuit alleges the circuit court erred in overruling its Motion for a New Trial.

Newell raises two points on cross-appeal. First, Newell alleges the circuit court erred because the judgment did not award prejudgment interest. Second, Newell alleges the circuit court erred in entering judgment in favor of Pro Circuit on the Delay Claim because the judgment was against the weight of the evidence.

## Pro Circuit's Point One

In its first point on appeal, Pro Circuit alleges the circuit court abused its discretion in overruling Pro Circuit's Continuance because: (1) it was Pro Circuit's first request for a continuance, (2) trial counsel had been reassigned to the case after an associate left trial counsel's firm, and (3) trial counsel needed additional time to conduct discovery and to secure witnesses for trial. We disagree.

### Standard of Review

"The circuit court's decision to overrule a motion for continuance is reviewed for an abuse of discretion." *Macke v. Patton*, --- S.W.3d --- 2019 WL 3146162 *1, *2 (Mo. banc

5

July 16, 2019).  "The circuit court abuses its discretion 'when the ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful, deliberate consideration.'"  *Id.* (quoting *Howard v. City of Kan. City*, 332 S.W.3d 772, 785-86 (Mo. banc 2011)).  "Denial of a request for a continuance is seldom reversible error."  *Tatum v. Tatum*, 577 S.W.3d 146, 153 (Mo. App. E.D. 2019).

**Analysis**

Pro Circuit's motion for the continuance stated as grounds that:  (1) additional time was necessary to complete discovery, and specifically information which must be obtained from third parties; (2) Pro Circuit wished to file an amended answer asserting counterclaims for defamation and commercial disparagement; and (3) that the matter was recently assigned to counsel because an attorney with the firm who had previously been working on the file was no longer with the firm.  In its response objecting to the request for continuance, Newell alleged that:  (1) the motion was untimely under local Circuit Rule 34.1; (2) Pro Circuit had not attempted any discovery in the over one year since the case was filed; (3)  counsel for Pro Circuit was present at the pretrial conference and agreed to the dates when the case was set for trial; and (4) Pro Circuit's current counsel of record is the only attorney who signed any pleadings since this case was filed and the only attorney representing Pro Circuit that has had contact with Newell since August of 2016.

6

"Failure to comply with requirements of [Missouri] Rule 65.03[3] is sufficient grounds for the trial court to deny a motion for continuance." *Elrod v. Elrod*, 192 S.W.3d 738, 742 (Mo. App. S.D. 2006) (citing *In re P.D.*, 144 S.W.3d 907, 911 (Mo. App. E.D. 2004)). We hold that the same is true of each circuit's local rules. Sixteenth Judicial Circuit Court Local Rule 34.1 (2019) governs continuances in civil actions and requires that a party moving for a continuance present their motions "to the court no later than the Wednesday before the trial date except for causes arising thereafter." Pro Circuit filed its Continuance on the Thursday before the trial date, and therefore, Pro Circuit's Continuance was not timely filed with the circuit court, which in itself is sufficient grounds to deny the Continuance.

Pro Circuit relies heavily on *Wegeng v. Flowers*, 753 S.W.2d 306, 309 (Mo. App. W.D. 1988), where this Court held that a denial of a continuance was an abuse of discretion. In that case, Wegeng originally claimed that she sustained soft-tissue damage in an automobile accident. *Id*. at 308. One month before trial, opposing counsel learned Wegeng needed a cervical fusion surgery and Wegeng's claims were "substantially larger" than those originally pled, and opposing counsel moved for a continuance after learning of Wegeng's change in medical condition. *Id.* at 307-08. Wegeng offered to make her physicians available for trial, but the defendant alleged there would be insufficient time between the surgery on February 12, 1987, and the trial set for March 16, 1987, to evaluate

---

[3] All rule references are to Missouri Supreme Court Rules (2019).

Wegeng's condition and to consult with defense's physicians regarding their opinions. *Id.* at 308.

Because the *Wegeng* court was troubled by the unfairness to the Defendant movants, who were surprised by Wegeng's new claims, Pro Circuit's reliance on *Wegeng* is misplaced. The court reasoned "Wegeng certainly knew that her condition changed after the case was set for trial and that her claim was substantially enlarged. Thus, the fact that the case had already been set for trial is not a sufficient answer to the claim of [Defendants] that they would not have sufficient time to properly evaluate the substantially enlarged claim in order to properly prepare for trial." *Id.* at 308-309. Here, Pro Circuit is both the movant and the party asserting substantially larger claims; therefore, Pro Circuit was not surprised by these counterclaims they wanted to file, and they do not allege that the counterclaims could not have previously discovered and raised through the use of due diligence.

Furthermore, we find the circuit court did not abuse its discretion in denying the Continuance because the denial does not shock the sense of justice. Trial counsel argued that "the matter was recently reassigned to [trial counsel] after previous assignment to an associate no longer with the firm." However, a careful review of the record indicates that trial counsel was the only attorney of record throughout the proceedings and that trial counsel signed and filed the following with the circuit court: (1) an Answer on September 5, 2017; (2) an Amended Answer on October 11, 2017; (3) a Certificate of Mailing on November 6, 2017; and (4) a Certificate of Mailing on November 30, 2017. No other attorney entered an appearance on behalf of Pro Circuit, nor did any other attorney

8

file documents on Pro Circuit's behalf. Trial counsel also signed Pro Circuit's answers to interrogatories on November 6, 2017, and November 30, 2017. The circuit court could infer from these actions that trial counsel was actively engaged in Pro Circuit's defense throughout the relevant time frame.

Additionally, trial counsel asserted that he needed more time to conduct discovery. However, "a circuit court does not abuse its discretion in refusing to grant a continuance to allow for additional discovery when the party seeking the discovery had adequate means and ample time to conduct it without court intervention." *Nigro v. St. Joseph Med. Ctr.*, 371 S.W.3d 808, 815 (Mo. App. W.D. 2012). In *Nigro*, Dr. Nigro "did not avail himself of the time and resources he had to obtain discovery." *Id.* at 816. Dr. Nigro filed a discovery motion eleven months after he filed the petition. *Id.* Dr. Nigro cited a need to depose additional witnesses but never served a subpoena or filed a motion to compel discovery. *Id.* The court noted that Dr. Nigro had the power to compel depositions without court intervention. *Id.*

In the instant case, Pro Circuit filed its initial answer on September 5, 2017. Further, on October 17, 2017, the circuit court, with agreement of the parties, ordered that the bench trial would be held on July 19 and 20, 2018. Trial counsel failed to conduct any discovery in the eleven months between the date the answer was filed and the date of trial. It is not unreasonable for the circuit court to overrule a motion for a continuance when a party fails to conduct discovery and then requests a continuance on the eve of trial for that purpose.

Finally, Pro Circuit asserted it needed additional time to secure witnesses before proceeding to trial. Before filing its Continuance, Pro Circuit had the ability to compel

9

witnesses to testify at trial by serving them with subpoenas, but in the eleven months the case was pending after a trial date was set, Pro Circuit never requested a subpoena. *See Wilkins v. Office of the Mo. Attorney Gen.*, 464 S.W.3d 271, 276 (Mo. App. E.D. 2015) ("[A] litigant has a right as of course to require the attendance at trial of those witnesses . . . as in his judgment are required by him to meet the issues raised in the action." (quoting *State ex. rel. R.W. Filkey, Inc. v. Scott*, 407 S.W.2d 79, 82 (Mo. App. 1966))). It is not an abuse of discretion to overrule a motion for a continuance on the grounds that witnesses are unavailable when a party has not taken any steps to exercise his or her right to secure those witnesses for trial.

Given the totality of the circumstances, the circuit's court's ruling was not unreasonable or arbitrary and does not shock the sense of justice. Therefore, the circuit court did not abuse its discretion. Pro Circuit's Point One is denied.

## Pro Circuit's Point Two

In its second point on appeal, Pro Circuit alleges the circuit court abused its discretion in overruling Pro Circuit's Continuance Reconsideration because: (1) it was Pro Circuit's first request for a continuance, (2) trial counsel had been reassigned to the case after another attorney left trial counsel's firm, (3) trial counsel needed additional time to conduct discovery and to secure witnesses for trial, and (4) Pro Circuit suffered greater prejudice from the denial of Continuance Reconsideration than Newell would have suffered if Continuance Reconsideration had been granted. We disagree.

10

**Standard of Review**

"[T]he trial court's decision to reconsider, amend, reverse, or vacate an interlocutory order is a matter within the trial court's discretion." *Universal Credit Acceptance, Inc. v. Ware*, 556 S.W.3d 69, 75 (Mo. App. E.D. 2018). "Accordingly, we review the court's ruling on a motion to reconsider an interlocutory order for an abuse of such discretion." *Id*. The abuse of discretion standard was discussed in the discussion of Pro Circuit's Point One.

**Analysis**

Pro Circuit filed its request for the trial court to reconsider its ruling on the motion for a continuance on July 18, 2018, Pro Circuit largely relied on the same factual assertions it made in its original Continuance request. Because these assertions were addressed in Pro Circuit's Point One, we decline to address them further. However, Pro Circuit raised one new assertion in this motion that was not contained in the original motion, stating that trial counsel had been unable to reschedule a hearing on July 20, 2018, in Johnson County, Kansas, "given the late notice."

We fail to see how Pro Circuit had "late notice" of the Jackson County trial because this trial had been set on the docket for eight months with the agreement of Pro Circuit's attorney. Furthermore, in *D.A.T. v. M.A.T.*, 413 S.W.3d 665, 670 (Mo. App. E.D. 2013), the court held that the circuit court did not abuse its discretion in denying a motion for a continuance when a party's attorney was unavailable. A wife was served notice of a hearing for a full order of protection less than one month before the hearing was held, and her attorney could not attend. *Id.* at 666. The court ultimately held that "[a] trial court has the right to control its docket, and the unavoidable absence of a party or his attorney due to an

11

engagement elsewhere . . . does not compel a continuance." *Id.* at 670 (quoting *Inloes v. Inloes*, 567 S.W.2d 732, 735 (Mo. App. 1978)). Additionally, unlike in *D.A.T.*, Pro Circuit cannot demonstrate prejudice by the absence of counsel because Pro Circuit's counsel attended and conducted the full trial, where in *D.A.T.* the wife was forced to proceed *pro se*.

Finally, Pro Circuit broadly interprets *Wegeng*, 753 S.W.2d at 306, to hold that is a *per se* abuse of discretion for a court to overrule a motion for a continuance without providing a written explanation. Pro Circuit's interpretation is not supported by the opinion in *Wegeng*. *Wegeng* imposes no such requirement, and we decline to extend *Wegeng* any further.

Pro Circuit's Point Two is denied.

## Pro Circuit's Point Three

In its third point on appeal, Pro Circuit alleges the circuit court erred in overruling Pro Circuit's Motion to Amend to include counterclaims for defamation and commercial disparagement against Newell because Pro Circuit faced substantial hardship arguing that Pro Circuit only omitted the matter from the original pleadings because it was not yet aware of the facts giving rise to the requested amendment and minimal injustice would result to Newell if the court granted leave to amend. We disagree.

### Standard of Review

"It is within the trial court's broad discretion to allow or disallow amendments to pleadings." *Bach v. Winfield-Foley Prot. Dist.*, 257 S.W.3d 605, 610 (Mo. banc 2008). "An appellate court will not disturb a trial court's denial of a motion to amend a pleading

unless it is clearly erroneous." *Id.* at 611. "A trial court has broad discretion to grant a party leave to amend an answer." *Sloan-Odum v. Wilkerson*, 176 S.W.3d 723, 725 (Mo. App. E.D. 2005). "[I]t is an abuse of discretion to not grant such leave when justice so requires." *Id*. The standard of review for abuse of discretion is set out more fully in the discussion of Pro Circuit's Point One and will not be repeated herein.

**Analysis**

The Motion to Amend was filed less than a week before the case was set for trial seeking to add counterclaims for defamation and commercial disparagement arising out of the transaction. As a matter of right, a party may amend its pleading once before a responsive pleading is served, or if no responsive pleading is permitted and the action has not been placed on the trial calendar, the pleading may be amended at any time within thirty days after it is served. Rule 55.33. "Otherwise, the pleading may be amended only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *Id.* "The rules on amendment serve to enable a party to present matters that were unknown or overlooked when the party originally filed its pleading, without altering the original cause of action." *Concerned Citizens for Crystal City v. Crystal City*, 334 S.W.3d 519, 526 (Mo. App. E.D. 2010). We consider the following factors when determining whether the trial court erred in denying leave to amend: "1) the hardship to the moving party that a denial would cause; 2) the reasons for the moving party's failure to include the matter in the original pleadings; 3) the timeliness of the application for leave to amend; and 4) the hardship or injustice that granting leave to amend would cause to the non-moving party." *Id.*

13

The circuit court found that Pro Circuit "assert[ed] no hardship in any manner in which defendant was hampered or subjected to hardship over the past year, which has resulted in its failure to assert a Counterclaim before July12, 2018 [sic]."

Pro Circuit sought to amend its answer to bring counterclaims for defamation and commercial disparagement arising out of the transaction that is the subject of this action, which are compulsory counterclaims under Rule 55.32(a).[4]   Therefore, Pro Circuit is precluded from bringing these claims in the future, and this preclusive effect supports a finding of hardship on behalf of Pro Circuit.  *Sloan-Odum v. Wilkerson*, 176 S.W.3d at 725; *Concerned Citizens for Crystal City*, 334 S.W.3d at 527.  While this factor weighs in favor of granting an amendment of the pleadings, it is not dispositive.

Pro Circuit's rationale for not asserting its counterclaims sooner is that "it had not yet completed an investigation to obtain sufficient facts underpinning such a counterclaim." The circuit court was not persuaded because Pro Circuit failed to assert any facts in support of this conclusory statement.  The circuit court specifically found that "[n]o dates or details have been provided for the 'investigation' that revealed its newly asserted proposed counterclaim[s]."  Likewise, we are unpersuaded by Pro Circuit's bare assertions, especially considering Pro Circuit failed to conduct any discovery in this case even though it responded to Newell's discovery requests and failed to explain why the necessary

---

[4] Rule 55.32(a) provides, in pertinent part:  "A pleading shall state as a counterclaim any claim that at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."

14

information to support the counterclaims could not have been reasonably discovered in a timely manner.[5]

In its brief, Pro Circuit argues that "counsel had only just begun to reacquaint himself with the case, and it is therefore reasonable to deduct [sic] that in doing so he identified the possible existence of a compulsory counterclaim to be made against Newell." Furthermore, counsel had been the attorney of record for the entirety of this litigation and the dilatory actions of another attorney in his firm does not constitute compelling grounds for granting an amendment to the pleadings this late in the process.

The circuit court further found Pro Circuit's Motion to Amend to be untimely filed. We agree. The court found that the parties had been involved in this litigation for eleven months and Pro Circuit filed its Motion to Amend on the eve of trial having failed to avail itself of any discovery during the entire pendency of the action.

Finally, the circuit court found that Newell would face hardship if the Motion to Amend was granted because the proposed counterclaims were only presented after Newell had completed its own discovery and trial preparation without any prior indication that a counterclaim may be raised. In *Sloan-Odum*, Odum and Wilkerson were both injured in a traffic accident. 176 S.W.3d at 724. Odum did not file an answer, believing her employer was responsible for making the claim, and on the eve of trial, Odum sought leave to amend. *Id*. The circuit court denied her leave to amend, but the appellate court reversed because Wilkerson had previously deposed Odum and "explored the nature and extent of [Odum's]

---

[5] We note that the Motion to Amend was filed simultaneously with Pro Circuit's Continuance request.

15

injuries." *Id.* at 724, 726.  However, in the instant case, Newell had no advance notice of the defamation claim or the commercial disparagement claim.  As a result, Newell had not conducted any discovery or deposed any witnesses relating to these new counterclaims.

In *Concerned Citizens*,  the Eastern District of this Court found a circuit court had abused its discretion in overruling a motion to amend the pleadings when the Plaintiffs filed their motion "within one week of the completion of the depositions, well before any potential trial date, which appears to be timely given the allegation of the discovery of further claims [during the depositions]."  334 S.W.3d at 527.  The Defendants alleged hardship in that Defendants had defined its trial strategy, litigation budgets, and had "essentially completed written discovery."  *Id*.  The court found that discovery was not complete at the time of the motion to amend, and "it would be speculative to say that there is a need for further written discovery."  *Id*.  Further, the depositions in that case led to the discovery of the potential of additional claims that were not evident prior to the taking of the depositions.  *Id.*

In the instant case, however, discovery had been completed by Newell and the matter was set for trial.  Pro Circuit had not even attempted to obtain any discovery from Newell prior to filing its motion and did not even attempt to indicate what additional discovery may be required.  Pro Circuit acknowledges if it was granted leave to amend that "additional time to complete discovery, including of third parties from whom information must now be obtained via subpoena, that in the course of its investigation it determined additional facts . . . upon which [Pro Circuit] desires to file an Amended Answer and Counterclaim[.]"  Pro Circuit does not ever state what new information became available

16

to them that suddenly made them aware of these potential additional claims, why they were unable to ascertain this information on a timely basis, or what additional discovery they may need to proceed with these claims. Pro Circuit's conclusory statements that it suddenly became aware of new facts that gave rise to these new claims are not sufficient to require the trial court to allow an amendment of the pleadings at this late date.

Given the totality of the circumstances, we find that Pro Circuit faces hardship because it will be unable to assert compulsory counterclaims. However, we find that the other factors outweigh this hardship, and the interests of justice do not require that Pro Circuit to have been given leave to amend under these circumstances at this late date. When a party seeks leave to amend its pleadings to bring a counterclaim on the eve of trial, that party must have a compelling reason for not asserting the counterclaim earlier. The circuit court was not persuaded by counsel's statement that an "investigation" had recently been completed giving rise to its sudden discovery of these additional claims. Likewise, we are skeptical of the quality of such "investigation" when the investigating party has not conducted any discovery. The trial court did not abuse its discretion in denying the continuance and the amendments to the pleadings.

Pro Circuit's Point Three is denied.

### Pro Circuit's Points Four and Five

In its fourth point on appeal, Pro Circuit combines separate contentions in one point relied on alleging the circuit court erred in entering judgment against Pro Circuit for unjust enrichment because its judgment was (1) against the weight of the evidence, (2) the court failed to consider substantial vital testimony, (3) the terms of the contract were not definite,

17

(4) additional charges incurred by Newell exceeded the scope of the contract, and (5) Newell's claim was barred by the voluntary payment doctrine. In its fifth point, Pro Circuit raises identical challenges to the circuit court's overruling Pro Circuit's Motion for Reconsideration, New Trial, and to Amend Judgment.[6]

These points relied on are multifarious. "A point relied on should contain only one issue, and parties should not group multiple contentions about different issues together into one point relied on." *Wolf v. Midwest Nephrology Consultants, P.C.*, 487 S.W.3d 78, 84 (Mo. App. W.D. 2016) (quoting *Rouse v. Cuvelier*, 363 S.W.3d 406, 419 (Mo. App. W.D. 2012)). "Multifarious points preserve nothing for appellate review." *Id.* However, because we prefer to decide cases on their merits, and because we can readily discern and separate the independent claims of error asserted in Pro Circuit's multifarious points relied on, we exercise our discretion to briefly address the merits of each claim. *Cityview Real Estate Servs., LLC v. K.C. Auto Panel, Inc.*, 576 S.W.3d 187, 191 (Mo. App. W.D. 2019).

**Standard of Review**

"On review of a court-tried case, an appellate court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Ivie v. Smith*, 439 S.W.3d 189, 198-99 (Mo. banc 2014)(citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "Appellate courts act with caution in exercising the power to set aside a decree or judgment on the ground that it is against the weight of the evidence." *Id.* at 205. "[A] claim that the

---

[6] Because the arguments in Pro Circuit's Points Four and Five are identical, we address them together.

judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment." *Id.* We defer "to the circuit court's findings of fact when the factual issues are contested and when the facts as found by the circuit court depend on credibility determinations." *Id.* at 206. "When the evidence poses two reasonable but different conclusions, appellate courts must defer to the circuit court's assessment of that evidence." *Id.*

**Analysis**

Pro Circuit argues the judgment for unjust enrichment should be reversed on all of the stated grounds. Pro Circuit essentially invites this Court to disregard the testimony unfavorable to Pro Circuit and consider the testimony it deems favorable. We do not reweigh the evidence, but accept the evidence and inferences favorable to the prevailing party and disregard contrary evidence. *Mullenix-St. Charles Props., L.P. v. City of St. Charles,* 983 S.W.2d 550, 555 (Mo. App. E.D. 1998). "We defer to the factual findings of the trial judge, who is in a superior position to assess credibility." *Id.* We decline Pro Circuit's invitation to reweigh the evidence the circuit court has already carefully considered as that would violate our long established standard of review. The circuit court's judgment is supported by the evidence.

The circuit court found that the agreement was primarily governed by a written proposal written by Pro Circuit which provides in relevant part:

> We propose to furnish the manpower, material, tools and equipment necessary to complete the [Ingredion] project. This proposal is based upon our interpretation of the plans and specifications. *Any extra work for items, which are not shown, will be done at an agreed extra price.*

19

There is no evidence whatsoever that Newell and Pro Circuit ever "agreed [on an] extra price" for any work Pro Circuit alleges was beyond the scope of the original project. Pro Circuit's project manager, Gary Smith ("Smith") testified that no written change orders were submitted in the course of the project, but excused this neglect based on the expediency of the project. Newell's Project Manager, Aaron Feickert ("Feickert"), testified that he was never contacted to discuss or obtain approval on any extra charges. Newell's on-site foreman, Jeff Huberty ("Huberty"), testified that he never authorized any extra work by Pro Circuit. This testimony in itself is sufficient to support the circuit court's finding that Newell had not approved any change orders or extra charges related to the Ingredion Project. In fact, the trial court specifically found that Pro Circuit had made a deliberate decision not to disclose or reveal the work it claimed it was performing outside of the scope of the original agreement and deliberately delayed any discussion of the extra work until after the project was completed. Further, the trial court found, "[t]here was no credible evidence of conversations, correspondence, emails or other disclosures or negotiations regarding change orders or extra charges prior to the final billing on 3/31/15. No explanations or backup documentation was provided for extra charges . . . . which were included on the 3/25/15 final bill." Substantial evidence supported the conclusion that Pro Circuit was unjustly enriched by receiving payment in the amount of $87,424.70 from Newell in order to secure discharge of Pro Circuit's mechanics' lien, as the entirety of that sum represented charges for alleged extra work Pro Circuit was not entitled to be paid.

Finally, Pro Circuit alleges the voluntary payment doctrine precludes recovery of the funds paid to them by Newell to remove the mechanics' lien even after the mechanics'

20

lien was untimely filed. Under the voluntary payment doctrine, "a person who voluntarily pays money with full knowledge of all the facts in the case, and in the *absence of fraud and duress,* cannot recover it back, though the payment is made without a sufficient consideration, and under protest." *Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 726 (Mo. banc 2009). "A payment made under fraud or duress cannot be voluntary." *Cridlebaugh v. Putnam Cty. State Bank of Milan*, 192 S.W.3d 540, 544 (Mo. App. W.D. 2006). Duress arises when "one party to the transaction was prevented from exercising [its] free will by threats or wrongful conduct of the other." *Slone v. Purina Mills, Inc.*, 927 S.W.2d 358, 370-71 (Mo. App. W.D. 1996). "Conduct cannot constitute duress unless it is wrongful; it is not duress to do, or to threaten to do, what one has a right to do." *Id.* at 371.

Section 429.080[7] requires that mechanics' liens be filed with the clerk of the circuit court "within six months after the indebtedness shall have accrued." It is undisputed that Pro Circuit's work on the project was completed on March 31, 2015, providing Pro Circuit the right to file a mechanics' lien on or before September 30, 2015, and its timely exercise of that right or threat to exercise that right would not have been wrongful before that date under these facts. However, Pro Circuit's threats to file a mechanics' lien and subsequent filing of the lien on January 20, 2016, were significantly after the statutory period allowing such a filing. Pro Circuit has failed to provide any evidence that it had a good faith argument or belief that the mechanics' lien was timely filed. This provided a factual basis

---

[7] All statutory references are to the Revised Statutes of Missouri (2016, as updated through February 5, 2020) unless otherwise indicated.

21

upon which the circuit court could find that the lien was filed wrongfully, if not fraudulently, for the purpose of impacting Ingredion, who would in turn put pressure on Newell to secure removal of the lien against Ingredion's property.

Predictably, in response to this improper lien, Ingredion pressured Newell to remove the lien, by threatening to pay the amount claimed and charging the amount back to Newell along with other expenses incurred, including Ingredion's attorneys' fees. In addition, Newell's Vice President, Greg Mulherin ("Mulherin"), received a letter from Ingredion stating that "[Newell] should be aware that this situation is placing Newell's relationship with Ingredion in jeopardy." Mulherin testified that Newell and Ingredion had a long standing business relationship with regards to Ingredion's plant in Cedar Rapids, Iowa. Ingredion was an important part of Newell's business, and Mulherin was concerned that the mechanics' lien would motivate Ingredion to find another contractor for future projects. Newell was contractually obligated to indemnify Ingredion attorneys' fees for any litigation between Ingredion and Pro Circuit. Given these facts, the record contains sufficient evidence to support the trial court's finding that Newell made its payment under duress and not subject to the voluntary payment doctrine.

Pro Circuit argues that, as a matter of law, a contractor who pays off a mechanics' lien before determining its validity cannot recover the amount paid on a theory of unjust enrichment because payment of the lien is voluntary. Pro Circuit argues that because a contractor can file a declaratory judgment to determine a mechanics' lien validity, the contractor is never sufficiently under duress to overcome the voluntary payment doctrine. Pro Circuit cites no authority for this sweeping proposition. Rather, as in any case, whether

22

a payment is voluntary, or is instead made because of wrongful or fraudulent conduct, and under duress, is a question of fact. Here, given the facial invalidity of Pro Circuit's mechanics' lien, the demonstrated threat to Newell's long-standing business relationship with Ingredion, and Ingredion's stated intent to satisfy Pro Circuit's lien and to back charge Newell, substantial evidence supported the conclusion that the voluntary payment doctrine did not bar Newell's unjust enrichment claim.

Pro Circuit's Points Four and Five are denied.[8]

## Newell's Cross Appeal

Newell raises two points on its cross appeal. First, it alleges that the trial court erred in failing to award prejudgment interest; and second, it alleges the trial court erred in failing to award damages on its Delay Claim.

## Newell's Point One[9]

In Newell's Point One on appeal, Newell argues the circuit court erred because it did not award prejudgment interest on the amount of the judgment.[10] Newell's claim for unjust enrichment arose from its payment of $87,424.70 under protest to Pro Circuit on January 22, 2016. Newell paid this amount under protest because it needed to release the mechanics' lien which was filed by Pro Circuit against Newell's customer Ingredion, to protect itself from litigation with its customer.

---

[8] On September 16, 2019, Newell made a "Motion to Strike Respondent-Appellants Exhibits 15 & 16 and Portion of Initial Appellant's Brief in Reliance Thereon And the Appendix and Suggestions in Support." Because we reach our conclusions without reference to these exhibits, we overrule the Motion to Strike, as it is now moot.

[9] Newell identifies its first point as Point Six. We refer to it as Newell's Point One for clarity.

[10] The circuit court's judgment denied prejudgment interest under Section 408.040.2. This subsection of the statute refers to post-judgment interest. We read the judgment to mean that no prejudgment interest was awarded under any provision of Section 408.020.

23

**Standard of Review**

"Determination of the right to prejudgment interest is reviewed de novo because it is primarily a question of a statutory interpretation and its application to undisputed facts." *Scott v. King*, 510 S.W.3d 887, 893 (Mo. App. E.D. 2017) (quoting *Children Int'l v. Ammon Painting Co.*, 215 S.W.3d 194, 202 (Mo. App. W.D. 2006)).

**Analysis**

Section 408.020 authorizes an award of prejudgment interest at the rate of nine percent per annum "for all moneys after they become due and payable . . on accounts after they become due and demand of payment is made . . . ." Prejudgment interest under Section 408.020 on a claim of unjust enrichment has specifically been authorized when the claim is liquidated. *Scott*, 510 S.W.3d at 894.

> To be liquidated, a claim must be fixed and determined, or it must be readily ascertainable by computation or a recognized standard. The rationale for the requirement that a claim be liquidated is founded on the notion that where the person liable does not know the amount he owes, he should not be considered in default because of failure to pay.

*Id.* (internal citations and quotation marks omitted). Merely because a party disputes the amount that is owed does not make the claim unliquidated. *Id.*

"As used in section 408.020, 'account' is regarded as equivalent to 'claim' or 'demand.'" *A.G. Edwards & Sons, Inc. v. Drew*, 978 S.W.2d 386, 397 (Mo. App. E.D. 1998). "The interest will be awarded after three requirements have been satisfied: '(1) the expenses must be due; (2) the claim must be liquidated or the amount of the claim reasonably ascertainable; and (3) the obligee must make a demand on the obligor for the

24

amount due." *Ronald K. Barker, PC v. Walkenhorst*, 547 S.W.3d 782, 785 (Mo. App. W.D. 2018). Newell has satisfied all three requirements.

Pro Circuit argues that the funds were never due because the circuit court erred in entering judgment in favor of Newell for unjust enrichment. Merely because a claim is disputed does not mean that it is unliquidated. *Scott*, 510 S.W.3d at 894. The validity of the circuit court's judgment in this respect has not been preserved for review. *See* discussion *supra* Pro Circuit's Point Four and Five. On January 22, 2016, Newell paid $87,424.70 under protest to release the mechanics' lien which was filed by Pro Circuit against its customer Ingredion, and because those funds were not owed to Pro Circuit, Newell had an immediate right to the return of the funds. Therefore, Newell has sufficiently demonstrated that the funds were due.

Second, Pro Circuit alleges that Newell's claim was not liquidated or reasonably ascertainable because the amount sprang from ten specific change orders and each change order was challenged. Newell argues that it was disputing the entirety of the payment it made to Pro Circuit in order to release the lien and it made the payment to release the lien in one lump sum. Regardless, the funds were liquidated. The contested funds were ascertainable both by computation of the sum of the ten change orders and also fixed and determined by the amount of Pro Circuit's mechanics' lien, which was $87,424.70. Neither party reasonably disputed the amount in controversy during the course of the litigation, only which party was entitled to the funds. Therefore, the funds were liquidated as required by section 408.020.

Finally, Pro Circuit argues that Newell failed to make a demand. On January 22, 2016, when Newell paid the funds necessary to release the mechanics' lien, it sent a letter to Pro Circuit, which provided in relevant part:

> This payment, however, is being made by Newell **under protest** for the sole and limited purpose of satisfying contractual obligations to Ingredion. Newell denies it is under any obligation to pay Pro Circuit $87,424.70, which amount Newell contends is unwarranted and unsubstantiated. Further, Newell expressly reserves the right to pursue legal and/or equitable action for purposes of recovering all or any portion of this amount. (Exhibit 23).

Newell contends this language is sufficient to make demand. We agree. "Although the demand need be in no certain form, it must be definite as to amount and time." *A.G. Edwards & Sons, Inc.*, 978 S.W.2d at 397. Newell's letter was specific as to the amount it had paid, that it did not owe this money to Pro Circuit, and that it would pursue legal action if the amount was not returned. Therefore, Newell's letter was a sufficient demand for the purposes of section 408.020. When a claim for unjust enrichment has liquidated damages and a proper demand, the award of prejudgment interest is compulsory under 408.020. *J & M Securities, LLC v. Brown,* 388 S.W.3d 566, 569 (Mo. App. E.D. 2012).

Therefore, we hold the circuit erred in not awarding prejudgment interest at the rate of nine percent per annum beginning on January 22, 2016, through October 1, 2019, the date judgment was entered.

Newell's Point One is granted.

26

**Newell's Point Two[11]**

In Newell's Point Two, Newell asserts the circuit court erred in entering judgment for Pro Circuit on Newell's Delay Claim because the amount of the incurred damages and Pro Circuit's failure to procure equipment causing the delay were undisputed facts. We disagree.

**Standard of Review**

"On review of a court-tried case, an appellate court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Ivie*, 439 S.W.3d at 198-99. This standard of review is addressed in the discussion of Pro Circuit's Points Four and Five.

**Analysis**

The circuit court found "the cause for these delays have not been established by a preponderance of the evidence. It is not clear that the delays in Pro Circuit's ability to perform were the result to [sic] Pro Circuit's own actions or inactions." The record demonstrates that Pro Circuit e-mailed Newell on November 11, 2014, requesting information about the magnet electrical specifications. Newell responded on November 14, 2014:

> Sorry for the delays but we have been going back and forth with the magnet people. I was able to get a hold of him today and he still does not have the electrical spec[ifications] worked out. The only thing I could get out of him is that the motor will more than likely be a 1/2 HP motor. He is trying to get things figured out and will contact me as soon as he has more details. I will contact you directly after this happens.

---

[11] Newell identifies its second point as Point Seven. We refer to it as Newell's Point Two for clarity.

Newell did not send the updated magnet electrical specifications until January 22, 2015, less than one week before the shutdown scheduled for January 27 through 30, 2015. Newell attributes the delay to the fact that Pro Circuit had not procured the motor control cabinet ("MCC") before the scheduled shutdown, but Smith, Pro Circuit's Project Manager, testified as follows:

> [Counsel]: Was there a reason why you didn't have the MCC box delivered at the, quote, unquote, promised time?
>
> [Smith]: I did not have all of the information I needed to order the MCC.
>
> [Counsel]: What kind of information would you need?
>
> [Smith]: Motor horsepowers, voltages, everything included, type of control.
>
> . . .
>
> [Counsel]: Did you order the MCC box as soon as possible after receipt of the spec[ifications] required to order it?
>
> [Smith]: I ordered the MCC when I got the E-mail from [Newell] that the magnet was a half horsepower and that the gates were one horsepower.

Newell bore the burden of establishing it was entitled to judgment on this claim, and the finder of fact was entitled to believe some, all, or none of any evidence presented at trial. Relief based on a claim that the trial court's judgment against the party having the burden of proof is against the weight of the evidence is rarely granted. *Maly Commercial Realty, Inc. v. Maher,* 582 S.W.3d 905, 911 (Mo. App. W.D. 2019).

Further, the evidence was sufficient for the trial court to find that Newell failed to timely provide Pro Circuit with the information needed to order the MCC, and this delay contributed to the shutdown delay. The circuit court found that the weight of the evidence

28

established that Pro Circuit was not the sole party responsible for the delay.  We defer to that finding by the trial court.  Newell's Point Two is denied.

## Conclusion

We affirm the judgment against Pro Circuit in the sum of $87,424.70.  We reverse the trial court's denial of prejudgment interest on that award.  Rather than remanding the case to the trial court, pursuant to Rule 84.14, we "give such judgment as the court ought to give" and amend the judgment to award prejudgment interest at the statutory rate of nine percent per annum under section 408.020 from January 22, 2016, until the date of judgment.  The trial court awarded post judgment interest citing as its authority "Sec. 484.020 RSMo."  The trial court's authority to award post judgment interest arises from Section 408.040 RSMo.  We further amend the judgment to correct this inaccurate citation to the statute.  In all other respects, the judgment of the trial court is affirmed.

_____

Gary D. Witt, Judge

All concur

29